CASE 22—PETITION EQUITY—OCTOBER 9.

# Kevil, &c., vs. Kevil, &c.

### APPEAL FROM CALDWELL CIRCUIT COURT.

1. In an action controverting the validity of a will, in the circuit court, the successful party may be entitled to a new trial on the ground of the discovery of new evidence, for the purpose of making the case stronger in the court of appeals.

2. Gross inequality, apparently unjust or unreasonable, is not alone sufficient to invalidate a will which otherwise would be unassailable; but apparent inequality or unreasonableness in a testamentary disposition is entitled, in proportion to its degree of flagrancy, to some auxiliary influence on the question of capacity, or fraud, or controlling influence; and, unexplained and combined with other corroborating evidence, it may be entitled to great influence.

SIMPSON & SCOTT,                                    For Appellants.

HARLAN & HARLAN,                                    For Appellees.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

Thomas Kevil, of Caldwell county, Kentucky, in June, 1855, when he was seventy-one years old, published as his will a testamentary document, whereby he disposed of his whole estate—worth about $50,000—unequally among his children, by two wives, giving to those of his first wife comparatively but little, and the residue to those of his then living wife, much younger than himself, and to whom he devised the most of it during her life.

After probate in the county court, the document—re-contested in the circuit court for the alleged incapacity of the testator and imputed control of his wife—the jury

Kevil, &c., vs. Kevil, &c.

found a verdict against it, and the court thereupon adjudged that it was not his will, and overruled a motion for a new trial. And from that judgment both parties appealed; the unsuccessful party appealing because, as alleged, the verdict was not authorized by the evidence, and the successful party appealing because the court refused a new trial on the discovery of additional evidence against the will.

Admitting that—anomalous as such a procedure in such a case certainly is—the party succeeding on the issue might be entitled to a new trial for the purpose of making the case stronger in the appellate court, nevertheless, the discovered testimony in this case being only slightly cumulative, was of such a character as not to have sustained a verdict, which, without it, should be set aside as unauthorized by the evidence heard by the jury. Wherefore, we cannot grant a new trial to the appellants, who obtained a judgment in the circuit court.

But, in our opinion, the circuit court erred in refusing a new trial to the other party.

Gross inequality, apparently unjust or unreasonable, is not alone sufficient to invalidate a will which otherwise would be unassailable. The testamentary power is of great value in both its enjoyment and its results; and therefore it should be well guarded by the law, and sternly upheld by the judiciary. Every competent and self-poised mind has, and should always have, an unquestionable right to make *its own will* according to the law of the land. And no person, either wife or child, has any legal right to deny that conservative power, or gainsay the free and voluntary exercise of it.

But apparent inequality or unreasonableness in a testamentary disposition is entitled, in proportion to its degree of flagrancy, to some auxiliary influence on the

question of capacity, or fraud, or controlling influence; and, unexplained and combined with other corroborating evidence, it may be entitled to great influence.

This is the uniform and undeviating doctrine of this court; and it was never, in any instance, when rightly understood, adjudged otherwise.

The apparent inequality in Kevil's will may, in some degree, be reconciled with parental justice and impartiality by the fact that, when the testator married his last wife, he was comparatively poor, and considerably increasing his estate as he did by the accession of her property, may have thought it his duty to give to her children the value of her original property and its increase. But however this prudential consideration might have operated, the apparent inequality on the face of the will is not sufficiently fortified by other evidence of incapacity or sinister influence to invalidate it as the testator's last testament.

Few wills have ever been sustained by more consistent and satisfactory evidence of testamentary capacity. The writer of the will testified that the testator dictated and fully explained every provision, and was clearly of sound and disposing mind. Three other subscribing witnesses testified to his capacity with equal confidence; and all these witnesses had been long and intimately acquainted with the testator. Several other like acquaintances fully and confidently concurred in favor of his capacity, which is also corroborated by proof of his provident and successful attention to his business, even after the publication of his will, and nearly or quite to his death, seven years afterwards. This mass of opinions and facts, made almost conclusive by the internal proof arising from the testator's calm and intelligent dictation of a will so minute and elaborate, is scarcely affected in any

rational degree by any opposing opinions or facts concerning capacity. Indeed, when carefully analyzed, the opposing testimony does not essentially impair the overwhelming evidence of capacity at the date of the will, but may be consistent with it.

We are therefore of the opinion that the will is unimpeachable for want of disposing mind.

On the question of the wife's imputed influence, there is some more doubt, but not enough to sustain the judgment against the will.

The effect of all the testimony on this point is only that the wife had certainly some, and possibly great, influence over the testator's mind in concerns of trivial importance. But it fails to show any instance of the successful or sinister exercise of it *in any important matter.* On the contrary, all the testimony exhibits him as a man of sound judgment and strong self-will in all important concerns.

Now, although it may be true that step-mothers often feel jealous of their husband's children by other wives, and sometimes successfully plot dissension and alienation; and even though there may be some ground for *suspecting* that this case may afford some illustration of that fact, yet there is certainly no proof of it or of the exercise of any subjugating or controlling influence in the moulding of the will of Thomas Kevil.

Wherefore, the judgment setting aside the will is reversed, and the will is established by the judgment of this court, and the cause remanded to the circuit court, with instructions to set aside the verdict and judgment in that court, and certify this judgment to the county court.