### CATO *et al.* v. HUNT, executrix.

1. Where a deed was attacked on the ground that the grantor had not capacity to contract and that the deed was procured by undue influence, it was error to refuse to allow the grantee, the grantor being dead, to testify that the grantor had lived in her home for several months and she had seen and talked with him daily, and that from these facts it was her opinion that he was of sound mind and mentally capable of making a contract.   To give an opinion based on these facts is not such testimony as to transactions or communications had with the deceased as should be excluded under section 5269 of the Civil Code.

2. Evidence that the grantor had, prior to the execution of the deed, frequently expressed an intention to make an entirely different disposition of his property, promising to give it to the person named in his will as sole legatee, was relevant and material in determining whether undue influence was brought to bear to induce the execution of the deed.

3. Evidence that such sole legatee had performed for the grantor valuable services, and that the grantor had agreed as compensation for those services to leave all of his property to such legatee, and showing the amount and value of the services performed, was relevant and admissible on the question of undue influence.

4. There was no material error in any of the other rulings of which complaint was made, and the judgment is reversed solely because of the error dealt with in the first division of this syllabus.

Argued October 5, — Decided October 31, 1900.

Equitable petition.   Before Judge Henry.   Floyd superior court. March term, 1900.

*Fouché & Fouché,* for plaintiffs in error.   *Neel & Neel,* contra.

SIMMONS, C. J.   Thomas Cato died leaving a will by which he gave all of his property to Ellen M. Hunt, and appointed her his executrix.   She qualified as executrix, and as such filed an equitable petition against William Cato and his wife, Laura H. Cato, seeking to have set aside a deed to Laura H. Cato, made by Thomas

Cato a few days before his death.   She alleged that, on account of imbecility and weakness of mind, Thomas Cato was, at the time of the signing of the instrument relied upon by the·defendants as conveying title to Laura H. Cato, incapable of making a contract. She further alleged that the grantee had induced the making of the instrument by fraud and undue influence.   The defendants denied the allegations as to mental incapacity, fraud, and undue influence. The case was tried, and the jury returned a verdict for the plaintiff, finding that the deed to Laura H. Cato should be canceled.   The defendants made a motion for a new trial, which was overruled by the court.   The movants excepted.

1. On the trial of the case, Laura H. Cato was offered as a witness in her own behalf to prove that Thomas Cato had lived in her house for several months prior to the making of the deed to her, that she had seen him daily and had frequent conversations with him, and that he was, in her opinion, fully capable of making a contract.   This testimony was objected to by the counsel for the plaintiff, on the ground that, Thomas Cato being dead, Mrs. Cato was incompetent as a witness to testify to any transactions or communications had with him.   The objection was sustained and the evidence rejected.   This ruling was made one of the grounds of the motion for new trial.   We think the court erred in rejecting this evidence.   It was not offered to prove any personal transaction or communication with the deceased grantor, but to show his mental condition.   It was simply the opinion of the witness as to his sanity and mental capacity, based upon the facts recited.   Mrs. Cato does not appear to have been offered to show the terms or the execution of the deed, or to testify as to what influence was brought to bear upon the deceased by her.   Her evidence was simply as to her opportunity for observing the deceased, and as to the impression made upon her by his conduct and conversation.   Had the grantor been in life and brought this action to set aside the deed on the ground of fraud and undue influence, he could not have denied her statement as to the opinion she had formed as to his mental capacity.   This court, in construing the first exception given in section 5269 of the Civil Code as to the meaning of the terms "transactions or communications," in the case of *Chamblee* v. *Pirkle*, 101 *Ga.* 792, said: "The true intent and meaning of the exceptions to the section above cited is to exclude testimony of any party as to

matters occurring or happening directly with the deceased party which he, if alive, could deny or explain. The statute does not render a witness incompetent simply because the other party is dead. It includes only direct transactions or communications between the witness and the deceased party, and as to all other matters the living party is a competent witness."

2, 3. The executrix alleged in her petition that she was the niece of Mrs. Thomas Cato, and that about fourteen years prior to his death Cato and his wife promised and agreed that, if she would live with them and help them, they would at their deaths leave her all the property of which they were possessed. She alleged that she left her home in another county and went to live with them, and that she waited on them and performed all their household duties until her aunt died, about a year before the death of Thomas Cato ; that even after that time she continued to wait upon and serve Cato, working in the field and about the house; that from the time of her arrival to the time when Cato left his home he repeatedly told her and his neighbors that he intended at his death to leave her all that he had ; that in pursuance of this intention, he, in April, 1897, made a will in which she was named as his sole legatee. This will he delivered to her. In August, following, he was stricken with paralysis, and in the fall of the year decided to discontinue housekeeping and move to an adjoining county. After the paralytic stroke he became physically and mentally diseased and incompetent to transact any business. He went to live with William Cato, his nephew, and Laura H. Cato, his nephew's wife, on December 8, 1897. On February 17, 1898, he signed the instrument which the plaintiff sought to have set aside, and which purported to convey to Mrs. Cato all of the real property of the grantor. The consideration recited was the promise of the defendants to support the grantor during his life and bury him after his death. After three or four weeks of illness and feebleness, he died, February 25, 1898. Evidence was introduced to sustain these allegations. Evidence of the declarations of Thomas Cato to the plaintiff and to his neighbors as to his intention to give all of his property to Miss Hunt, and of the amount and value of Miss Hunt's work and services in the field and about the house, was objected to by the defendants on the ground that it was irrelevant and threw no light upon the capacity of the grantor, or upon the

question as to whether undue influence had been used in order to induce him to make the deed. We think the court was right in admitting the evidence, especially as the jury was instructed that the evidence was admitted, not to show any legal right on the part of Miss Hunt to recover for her services, but simply to show that Cato, who for many years had intended to give this property to Miss Hunt, suddenly changed his mind after the paralytic stroke and after he had left her and gone to live with Mr. and Mrs. William Cato. While this evidence may have been of but little weight in determining the capacity of the grantor at the time of the execution of the deed, and of no great probative value on the question of whether undue influence was exercised upon him, it was nevertheless relevant, and was evidence which the jury could have considered in determining both of these questions. They might have inferred that, since Cato had for many years prior to his paralytic stroke declared an intention that the property should go to Miss Hunt, and had known the value of her services and fully recognized the justness of his fulfilling his promises to her, something unusual must have occurred to change his mind. The other evidence in the case showed that he had left his farm and gone to the house of William Cato in December, and that about the middle of the following February he had made the deed to William's wife. Could the jury not have reasoned that, after having given evidence that he recognized fully the obligations, legal and moral, which he owed to Miss Hunt, and after having for fourteen years expressed his intention of giving her all of his property, the old man would not have changed his intention unless his mind had become unsound or unless some undue influence had been exerted upon him? Could they not have inferred that his apparent forgetfulness of his legal and moral responsibilities arose from a disordered intellect, or that his enfeebled mind had yielded to improper and undue influence? Of course, if the defendants' contention be true, that Miss Hunt had deserted Thomas Cato in his old age and refused longer to live with or serve him, the facts discussed above could have little or no probative value. As it was, we think the court did not err in admitting the evidence. In testing mental capacity and in investigating fraud and undue influence upon old and feeble persons, courts are very liberal in admitting evidence. Anything calculated to throw any light upon the intention of the grantor or upon his

mental condition is, in such an investigation, generally admissible. Fairchild *v.* Bascomb, 35 Vt. 399; Kevil *v.* Kevil, 2 Bush, 614; Jarman, Wills (5th, Am. ed.), 139; Schouler, Wills (3d ed.), § 194.

4. The motion for a new trial contained many grounds, most of which are covered by the rulings above made. In none of them does any material error appear, save in those complaining of the rejection of the evidence of Mrs. Laura H. Cato and dealt with in the first headnote. Upon that ground alone is the case remitted to the lower court and a new trial ordered.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., and Little, J., absent.*