## 1249. GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY v. RANSOM.

1. This court can not say that the verdict is without any evidence to
support it, and therefore can not grant a new trial on the general
grounds.
2. The excerpts from the charge on which error is assigned, when consid-
ered in connection with the entire charge, contain no reversible error.
3. Evidence that the plaintiff was made nervous and had to go to bed
and send for a physician on account of alleged mistreatment is admis-
sible under an allegation that mental pain was caused by such mis-
treatment. The evidence tends to prove the allegation.
4. In a suit by a passenger to recover damages from a railroad company
for the insulting conduct and language of its conductor, testimony as
to the general character and reputation of the offending conductor, for
polite and courteous treatment of his passengers, is admissible.
5. The credibility of witnesses being a question entirely for the jury, any
fact or circumstance that would tend to throw light on that question,
or that would assist the jury in weighing the testimony, is proper and
relevant. The age, the business, the condition of a witness, whether
married or unmarried, and whether he has children, frequently illus-
trate the question of his credibility.
6. A new trial should have been granted in this case, on the ground of
newly discovered testimony; and we reverse the judgment for that er-
ror alone.

Action for damages, from city court of Cordele—Judge Strozier.
May 26, 1908.

Argued July 16, 1908.—Decided January 27, 1909.

*John I. Hall, M. P. Hall, J. E. Hall,* and *W. H. McKenzie,* for
plaintiff in error. *F. G. Boatright,* contra.

HILL, C. J. Mrs. J. W. Ransom brought suit against the Geor-
gia, Southern and Florida Railway Company, to recover damages
for "her mental pain, mortification, and humiliation" caused by
the tortious conduct of the conductor of the defendant's passen-
ger-train. She alleges, that on November 11, 1907, she purchased
a ticket from the defendant's agent at Dakota, Ga., from Dakota

to Cordele, and took passage on train No. 6, known as the "Shoo fly;" that she had with her two small children, one of whom was a nursing baby held in her arms. When the conductor of the train called on her for her ticket she had misplaced it, and could not find it at once. She told him that she had bought a ticket but had misplaced it, and would make an effort to find it; whereupon he left her. Subsequently the conductor called on her a second time for her ticket, and, it not having been found, he told her she would have to pay her fare or get off the train. She then told him that if she could not find her ticket she would pay her fare, whereupon he again left her. After the train had reached the county of Crisp, the conductor again approached her and again demanded her ticket or her fare. She told him that she had not been able to find her ticket, but that if she did not find it she would pay her fare; whereupon the conductor, in a rude and insolent manner, with the evident intention to embarrass her, said to her, in substance, "You are a woman. You can take advantage of me. I will just pay your fare for you in the presence of these gentlemen," the gentlemen referred to being three or four men, strangers to her, who were sitting near her and hearing what the conductor was saying, his remarks being addressed in such a manner as to especially call their attention, as though he desired them to witness the fact, as he intimated, that she was trying to beat him out of her fare, and that, because she was a woman, he would submit to the imposition and pay her fare himself rather than put her off the train. Shortly thereafter she found her ticket and turned it over to the conductor. She alleges that the conduct of the conductor was "unnecessary, cruel, wilful, and wanton, and was intended to and did cause her great mortification, mental pain, and humiliation, she being in effect charged by him with a criminal offense under the laws of the State, to wit, trying to steal a ride on the train, all of which was without due cause, excuse, or justification," and she lays her damages in the sum of $1,000. The jury found a verdict in her favor for $700, and the company's motion for a new trial was overruled. The motion for a new trial contains numerous assignments of error. We will only consider those which we think are meritorious.

1. As to the general grounds, the evidence of the plaintiff in her own behalf proves substantially the allegations of her petition;

and it may be stated that her testimony and that of the witnesses for the defendant are practically identical, except as to the manner and conduct of the conductor, and except as to the fact, stated by her, that she told the conductor that she would pay her fare if she did not find her ticket. The conductor and two passengers who were immediately behind the plaintiff testified, that he approached her three times at reasonable intervals, and each time urged her to find her ticket, and that finally, as the train was approaching Cordele, he told her that if she did not find her ticket she would have to pay her fare, inasmuch as he was compelled to have a ticket or the fare for each passenger, and that she replied to the conductor that she had bought her ticket, and if she found it she would surrender it, but that she would not pay her fare again; that the conductor then said to her, "Madam, in the presence of these gentlemen I will pay your fare. I think you are taking an undue advantage of me. I will pay your fare myself." The two witnesses also testified, that the conduct and manner of the conductor towards the plaintiff were gentlemanly, and that he did not speak harshly to her; that the gentlemen referred to were. themselves, who sat just behind the plaintiff. The plaintiff also testified, that the conduct of the conductor caused her to be nervous and sick; that she had to go to bed and send for the doctor, from the effects of this treatment of her by the conductor. The physician testified, that he was called to see the plaintiff professionally on November 12, and found her in a very nervous condition; that he could not ascertain from an examination the cause of her nervous condition, but that the conduct of the conductor on the day before, as related by her, would have been sufficient to produce the condition in which he found her, and in which she remained while under his treatment for several days. He further testified, that he had had occasion to treat her during the same month, but at that time did not find that she was in a nervous condition; that he did not think her nervous condition could have been caused by the care of the two little children on the car, one of whom was a babe three months old and was quite restless.

Considering this evidence as a whole, we are very clear that the case made for the plaintiff was extremely weak. The language which she states the conductor used to her does not of itself, rea-

sonably construed, support the charge that it was insulting, or intimate that she was guilty of the penal offense of stealing a ride. She admits that the conductor gave her ample opportunity to search for her ticket and did not demand her fare until she was near her destination. The statement of the conductor when she had failed to find her ticket, and when she had only promised to pay her fare in the event she did not find her ticket, was probably due to the dilemma in which he found himself. She had not found her ticket, she had not paid her fare, and she was nearing her destination. In the proper discharge of his duty to his employer, the conductor was compelled to exact from the passenger either her fare or her ticket, or to put her off. Being a woman with two small children, he did not want to go to the extremity of putting her off. The fact that she was a woman placed him in an awkward position, and did result in what he, according to her testimony, characterized as an undue advantage which she took of him; and, therefore, he offered to pay her fare rather than put her off the train. The use of the word "woman" by the conductor, instead of the word "lady," seems to have been considered by the plaintiff as an aggravation of the intent to insult her. Certainly this was supersensitiveness on her part. The use of the word "woman" can not be regarded as in any sense offensive. In fact, in this day when the word "lady" is so generally misapplied, we are inclined to think that the word "woman" is indicative of respect. The insult to the plaintiff, therefore, must have been more in the manner of the conductor than in what he said to her. Whether his language in connection with his manner was insulting to the plaintiff, and did humiliate, mortify, and cause her mental pain, as she testified, was exclusively for the determination of the jury. But we are constrained to think that the amount of the verdict in this case proves that the jury were very generous and chivalric, probably more so than the facts warranted. This question, however, is not for us, but for the jury and the trial court; and with this comment we there leave it.

2. We have carefully examined all the excerpts from the charge on which error is assigned, and we have come to the conclusion that, when these extracts are considered in connection with the entire charge, they contain no material or reversible error.

3. Objection was made to the ruling of the court in permitting

the plaintiff to testify that the language and conduct of the conductor caused the plaintiff to be nervous and sick, and that she had to go to bed on account of such treatment and send for a doctor, and also in permitting her physician to testify substantially to the same effect, on the ground that the allegations of her petition claimed no damages for physical injuries, and that the allegations were not sufficiently broad to admit of this evidence. The allegation of the petition is that the language and conduct of the conductor complained of caused the plaintiff "mental pain." In proof of this allegation we think it was admissible to show that the plaintiff was nervous, and that the extent of her nervousness was such that she was compelled to take her bed and send for her physician. Mental pain and nervousness, if not the same physical ailments, are so closely akin that it would be splitting hairs to attempt differentiation.

4.  The defendant's counsel offered to prove, on cross-examination, the general reputation of the conductor for courtesy and politeness in the performance of his duties, but this testimony was excluded, upon the objection of plaintiff. We think that the character of the allegations and the proof made by the plaintiff involved the character of the conductor in his treatment of his passengers, and that for this reason the evidence was admissible. Civil Code, §5159; *Enright* v. *Atlanta,* 78 *Ga.* 288 (3); *DuBose* v. *DuBose,* 75 *Ga.* 753; *Columbus & Rome Ry. Co.* v. *Christian,* 97 *Ga.* 56 (25 S. E. 411). But we do not think that the erroneous exclusion of such testimony would in every case be of sufficient gravity to justify a reversal, and probably it would not in the present case.

5.  The defendant attempted to prove that one of its witnesses was a man of family and had grown daughters, and, on objection, this testimony was excluded. The credibility of witnesses is exclusively for the jury. In considering this question the jury are entitled to every fact or circumstance that would legitimately enable them to properly weigh and determine the credibility of testimony. Who a witness is, his age, his business, and whether a married man or otherwise, are relevant facts on the question of his credibility; and we think that these questions are especially relevant when the issue is as to the propriety or impropriety of manner and conduct. To illustrate by this case: the conductor

was charged with using insulting language and of treating in an offensive manner a lady passenger. The witness who was interrogated as to his family relations had testified that the language and manner of the conductor were not insulting, but were polite and courteous. It certainly is not an unreasonable hypothesis that a married man and a father with grown daughters would be more exacting in his standard of courteous treatment by a man of a woman than one who had no such ties; and we therefore think that the testimony excluded by the court was properly admissible, but we do not think that its exclusion alone would be sufficiently material to warrant a new trial.

6. We are clear that a new trial should be granted in this case on the ground of newly discovered testimony. The verdict, as we have before intimated, is large to the point of generosity. Its size is probably due to the fact that the court permitted evidence to be introduced as to the plaintiff's physical condition, alleged to have been caused by her treatment by the conductor. It was claimed by the plaintiff that this treatment was of sufficient severity to cause her to be very nervous, to take her bed, and to send for a doctor; and the doctor subsequently corroborated her testimony on this point. There was no intimation by her or by her physician of any other existing cause for such nervous condition. The general statement in her declaration, that she suffered mental pain as a result of such treatment, was hardly sufficient to put the defendant on notice of the character of the evidence which she offered in support of this allegation. It can not be doubted that the jury considered this nervous physical condition as having been caused by her treatment at the hands of the conductor, and that it was largely a factor in fixing the amount of the damages. Now this newly discovered testimony tends to show that this nervous condition, which the plaintiff testified was due solely to the treatment which she had received from the conductor, had in fact existed in a very aggravated state before this occurrence. One of the newly discovered witnesses was a woman at whose house she had stayed the night before, and who makes an affidavit that on that night the plaintiff told her that she was "having spells with her heart;" that she had been going to see Dr. McArthur, the physician who testified for her at Cordele, and who had been treating her for heart trouble. And the other newly discov-

ered witnesses make affidavit that the plaintiff had been for some time previous suffering from extreme nervousness, and was under treatment for such condition,—that she had spells of nervousness. One of the witnesses states that she had seen the plaintiff in one of these "smothering spells," as she expresses it, but she did not hear the plaintiff attribute her condition on that occasion to the treatment of the conductor. In fact she had never heard about such mistreatment. Is it not probable; therefore, that, in allowing the amount which was awarded as damages, the jury acted under the belief that the plaintiff, when she was maltreated, as she alleges, was a sound and healthy woman, free from every nervous trouble, and consequently awarded her a larger amount than they would have awarded if this newly discovered evidence had been before them? ' There was no want of diligence shown on the part of the defendant in failing to acquire knowledge of this evidence before the trial. The evidence was not cumulative. It was material, and all the preliminary requisites relating to newly discovered evidence were fully complied with. We think the jury should have the benefit of this evidence; and we therefore award, on this ground, another trial. *Atlanta Consolidated Street Ry. Co.* v. *Beauchamp,* 93 *Ga.* 6 (19 S. E. 24).

*Judgment reversed. Russell, J., dissents.*