### 1624. McCLURE *v.* STATE BANKING COMPANY.

Under a plea of non est factum filed by the alleged maker of a note when sued thereon (it being contended that the forgery was committed by the payee), it is competent for the defendant, in support of the plea, to show that the payee is a person of general bad character, and especially that he has the general reputation of having been engaged in the business of committing forgeries.

Complaint, from city court of Hall county—Judge Boone. December 31, 1908.

Submitted February 24,—Decided June 15, 1909.

*George K. Looper, B. P. Gaillard Jr.,* for plaintiff in error.

*W. I. Hobbs, H. H. Perry,* contra.

POWELL, J. The bank sued McClure on a note made payable to one Turner and indorsed by him to the bank. The defendant claimed that the note was a forgery, and that Turner had committed the forgery. He offered to prove, in support of this contention, that the general reputation of Turner was very bad, and that he bore the general reputation of having been engaged in the business of committing forgeries. The court declined to allow the proof. There was a verdict for the plaintiff, and the defendant excepts to the overruling of his motion for a new trial.

The rule prevailing in England and in most of the American States, that evidence of character is not usually received when offered for the purpose of throwing light on the probability of the doing of a certain act by the person whose character is in question, is not of force in this State. The contrary doctrine has been recognized in our jurisprudence from a very early date. The Civil Code, §5159, provides, "The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character

and renders necessary or proper the investigation of such conduct." The rule is especially applicable to, if not confined to, cases where a particular trait of the person whose conduct is under investiga-- tion is involved, or the alleged conduct is such that no person of good character would likely commit it. If only a particular trait is involved, the testimony should be limited accordingly. On the subject generally see *McNabb* v. *Lockhart,* 18 *Ga.* 496 (11), 512 (in which the party's character for honesty and general trust-worthiness was involved) ; *Planters Bank* v. *Neal,* 74 *Ga.* 576, 581 (in which a person's character as a man of close attention to busi-ness was involved) ; *Falkner* v. *Behr,* 75 *Ga.* 672, 676 (in which the general character of one of the parties was involved) ; *DuBose* v. *DuBose,* 75 *Ga.* 753 (in which the husband's character for decency was involved in a divorce action) ; *Columbus Ry. Co.* v. *Christian,* 97 *Ga.* 56, 25 S. E. 411 (in which the character of the defendant's agent as a dangerous man was involved) ; *German American Life Asso.* v. *Farley,* 102 *Ga.* 720, 29 S. E. 615 (in which the plaintiff's character was involved on an issue as to whether he had committed fraud in procuring a policy of insurance). See also *Ga. So. Ry. Co.* v. *Ransom,* 5 *Ga. App.* 740 (4), (63 S. E. 525). In all of these cases it was held that evidence as to the particular or general traits of character involved in the respective actions was admissible. In *Boatright* v. *Porter,* 32 *Ga.* 140, there is a negative pregnant that in an ejectment case the bad character of one of the grantees in the plaintiff's chain of title would have been relevant if there had been any contention that he had practiced fraud in connection with the title. Frequently this kind of evidence has a distinct relevancy and a high degree of probative value, because it tends to make the question involved in the issue more or less probable in favor of one side of the case or the other. Even those courts and text-writers who support and lay down the proposition that the evidence is not admissible do not put it on the ground that the evidence lacks relevancy or probative value, but rather rely on the ancient and well-established character of the rule itself. The courts of this State, out of deference to the policy expressed in the maxim "Let there be light," have rejected the old rule, which has long outlived the reason from which it sprang.

In the case at bar the maker of the note claimed that Turner had forged his signature. Now, if Turner were a man of good character, this fact would have made the defendant's contention

very improbable. Unquestionably the plaintiff would have had the right to prove that Turner was a man of good character, and it was not even necessary for him to prove this to get the benefit of it in the argument; for there is a presumption, until the contrary appears, that every person has a good character, and this presumption is strong enough to afford a basis for argument by counsel and for action by the jury. *Goggans* v. *Monroe*, 31 *Ga.* 331; *Bennett* v. *State*, 86 *Ga.* 404 (12 S. E. 806, 12 L. R. A. 449, 22 Am. St. R. 465); *Ga. Ry. & El. Co.* v. *Dougherty*, 4 *Ga. App.* 614, 616, 618 (62 S. E. 158). On the other hand, proof that Turner was a man of bad character, and especially that he had the general reputation of being a frequent and notorious forger, would tend to make the defendant's contention that the signature to the note was a forgery more probable. The conduct charged to Turner in the present inquiry was such as to involve his general bad character, and also his special bad character, as we may call it; and the rule limiting the evidence to a particular trait (*Anderson's* case, 107 *Ga.* 506, 33 S. E. 644) was not applicable.

In this connection it may not be amiss to call attention to the fact that the party offering evidence of character, good or bad, is confined to generalities, and can not show special instances or particular acts, though the party cross-examining has this privilege. For example, in the present case the defendant had the right to show by witnesses who knew Turner's general reputation that it was bad; also that he had the reputation, not merely of having committed a single forgery, but of having made a practice of committing forgeries, or that he had the reputation of having committed many forgeries. The plaintiff on cross-examination would have had the right to test the extent of the information of the witnesses offered for this purpose, by inquiring particularly as to what they had heard. If the plaintiff in turn had offered witnesses as to Turner's good character, either generally or particularly in regard to forgeries, the defendant then could have cross-examined by asking the witnesses as to what had been said of him regarding particular transactions.

The court did not err in ruling out the testimony offered by the defendant to show particular acts of forgery.

*Judgment reversed.*