Gordon W. KILGORE, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 71-2718.

United States Court of Appeals,
Fifth Circuit.

Sept. 25, 1972.

William J. Schloth, U. S. Atty., Macon, Ga., Jay R. Weil, Scott P. Crampton, Meyer Rothwacks, Daniel Rosenbaum, Attys., Dept. of Justice, Tax Div., Washington, D. C., Fred B. Ugast, Acting Asst. Atty. Gen., Bennet N. Hollander, Wesley J. Filer, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

R. Lamar Moore, Moultrie, Ga., Hillard P. Burt, Albany, Ga., Moore & Chambliss, Moultrie, Ga., Burt, Burt & Rentz, Albany, Ga., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

What is the measure of a man? In this life it is sometimes said to be that often illusory and chimeric creature called reputation. The instant case

presents the use of reputation testimony in a tax refund suit, prosecuted in hope, and defended on grounds of taxpayer fraud. The narrow legal issue on appeal is whether the taxpayer's character witnesses could permissibly be cross examined concerning the community's awareness of taxpayer's plea of nolo contendere to a charge of criminal tax fraud.

The salient facts are undisputed and largely stipulated. In 1964 the Internal Revenue Service began an in depth audit of taxpayer Kilgore's affairs. A decision to seek criminal sanctions was made when a net worth survey of Kilgore revealed the following discrepancies in reported and actual taxable income:

| Year | Reported Taxable Income | Taxable Income By Net Worth Computation |
|------|------------------------|------------------------------------------|
| 1955 | $ –0– | $12,151.91 |
| 1956 | 1,122.31 | 12,916.71 |
| 1957 | 823.91 | 7,854.36 |
| 1958 | 1,045.50 | 10,867.09 |
| 1959 | 1,508.81 | 24,385.61 |
| 1960 | 1,333.83 | 29,661.39 |
| 1962 | 2,365.17 | 31,190.02 |

The alleged unreported taxable income led not only to the filing of the indictment, but also to the assessment of taxes, fraud penalties and interest. The assessments broke down as follows:

| Year | Income Tax | Fraud Penalty | Interest | Total |
|------|-----------|---------------|----------|-------|
| 1955 | $ 3,524.24 | $ 1,762.12 | $ 2,679.02 | $ 7,965.38 |
| 1956 | 3,590.06 | 1,795.03 | 2,513.65 | 7,898.74 |
| 1957 | 1,751.53 | 875.77 | 1,121.28 | 3,748.58 |
| 1958 | 2,740.14 | 1,370.07 | 1,589.75 | 5,699.96 |
| 1959 | 9,497.75 | 4,748.88 | 4,940.44 | 19,187.07 |
| 1960 | 12,791.27 | 6,395.64 | 5,886.16 | 25,073.07 |
| 1962 | 13,345.10 | 6,672.55 | 4,539.53 | 24,557.18 |
| | $49,240.09 | $23,620.06 | $23,269.90 | $94,130.05 |

■ Kilgore paid the assessment and entered a plea of nolo contendere to the criminal tax fraud indictment. He filed a claim for refund of the assessment, and after a denial of that claim filed this suit to recover the entire assessment. His suit claimed (a) that he had not fraudulently understated his income for the years in question, and (b) that the three year statute of limitation provided by 26 U.S.C. § 6501 had expired, thereby foreclosing the Government's assessments. The Government answered asserting fraud under § 6501(c)(1). This proof was necessary even though Kilgore had stipulated that the amounts of income tax assessment for these years were correct. This result obtained because the six year limitation period of § 6501(e) had expired for taxable years 1955 through 1960. Cf. Taylor v. United States, 417 F.2d 991 (5th Cir., 1969); Toledano v. C.I.R., 362 F.2d 243 (5th Cir., 1966); Kreps v. C.I.R., 351 F.2d 1 (2nd Cir., 1965). See also, Cardinal Life Ins. Co. v. United States, 425 F.2d 1328 (5th Cir., 1970).

■ While Kilgore was party plaintiff in the refund case and had the duty to go forward with the evidence, the Government, to avoid limitations, had the burden of producing some evidence of fraud. That evidence, however, had to be clear and convincing, the risk of nonpersuasion thereby clearly falling on the Government. Biggs v. C.I.R., 440 F.2d 1 (6th Cir., 1970); Webb v. C.I.R., 394 F.2d 366 (5th Cir., 1968); Henry v. C.I.R., 362 F.2d 640 (5th Cir. 1966); Merritt v. C.I.R., 301 F.2d 484 (5th Cir., 1962). After stipulating the amounts of understatement and taxes owing, Kilgore, as the party plaintiff, used his tactical advantage to present five character witnesses in an attempt to rebut the inferences of misconduct which arose from the repeated understatement of tax liability shown on the stipulation. The witnesses all had known Kilgore for sev-

eral years. A representative examination proceeded along the following lines:

**MR. HUDSON MALONE**
called as witness in behalf of Plaintiff, being duly sworn, testified on

**DIRECT EXAMINATION**
BY MR. BURT:

Q Will you state your name, please?

A Hudson Malone.

Q Are you better known as Judge Malone?

A Well, I was Judge of the Juvenile Court for 24 years.

Q And when did you discontinue being Judge?

A Last August.

Q What is your occupation at this time?

A I'm Executive Director of the Housing Authority of Albany, Georgia.

Q And how long have you been so engaged?

A Nearly 31 years.

Q Do you know Gordon Kilgore?

A Yes sir.

Q And how long have you known him?

A 25 or 30 years.

Q In what capacity have you known him, what dealings have you had with him?

Q Well, I knew him first as a member of our Sunday School class and then in '49 and '50 he was President of the largest class in South Georgia, over 200 members. He was elected President.

Q Does your organization do business with him?

A Yes, we do.

Q What kind of business is that?

A We have bought large quantities of floor tile from him.

Q Do you know—do you have knowledge of his general character in this area?

A It's excellent.

Q From that character, would you believe him under oath?

A Yes sir.

The Government, after the jury had been removed, proffered a proposed line of cross-examination:

BY MR. WEIL:

Q Judge, how long have you known Mr. Kilgore?

A Approximately 25 years.

Q On what do you base your opinion on his reputation?

A Well, he's been a regular attendant at Sunday School; he's called on in the mornings in the last I've noticed several times he's asked to give the morning prayer; he's a regular attendant at church as far as I know; and I have done business with him, which has been very satisfactory. He's impressed me as not only being a good business man but very ethical. He refused to sell me for many years on the grounds that I was not a contractor nor an agent and he was protecting his people. When we could buy in truckload lots, he bid on our tile and he was low bidder. His billings were correct; his discount was shown as he bid and we have paid all but a few thousand dollars. We've bought, I reckon, $15,000 worth of tile from him in the last six months.

Q Sir, would your opinion be changed if you knew that he was fined $5,000 for criminal income tax evasion?

A Well, I believe I'm on the stand to tell about his reputation.

Q My question is, would your opinion of him change or be affected by the fact that Mr. Kilgore was fined $5,000 for criminal income tax evasion?

A I would still say he's a fine christian gentleman and of fine character and of good reputation in the community.

Kilgore's attorney objected to this line of cross-examination on the grounds

that a party's plea of nolo contendere is not an admission of guilt in any other case, and is not admissible for cross-examination of the party's character witnesses. The district court ruled:

THE COURT: Well, it's the Court's view that to allow counsel for the Defendant to ask the witnesses questions such as just been asked, to allow that question to be asked in the presence of the jury would simply get before the jury the fact that Mr. Kilgore at some time past did enter a plea of nollo contendere in a criminal tax fraud case. As I see it, that's the only purpose of the question, to get that before the jury. And since it is not the design and intent of the law that a plea of nollo contendere shall be used against a man in any other proceeding, the Court will *sustain* the objection to the question as propounded, with regard to whether the witness, whether his opinion with regard to the Defendant (Plaintiff) would be modified if he knew that the Plaintiff in this case has heretofore entered a plea of nollo contendere in a criminal tax fraud case. So, I will *sustain* the Plaintiff's objection to the question.

Now, so we won't have to go through this each time a character witness is put on the stand, just let the record indicate that with regard to each witness who is put on the stand that you would have asked this question and I would have made this ruling, so we won't have to exclude the jury any further.

Now, bring the jury back, Mr. Marshal.

The jury eventually returned a verdict for Kilgore and the Government asserts the denial of the proffered cross-examination as reversible error mandating a new trial.

In analyzing the claim of error there is an initial question to be considered— whether plaintiff's character evidence was admissible at all in this civil action. The proposed federal rules of evidence have not yet been adopted. We are, therefore, left with the tri-part test of admissibility under Federal Rules of Civil Procedure, 43(a).

(a) *Form and Admissibility.* In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner.

■ Evidence of character in civil actions, therefore, is admissible if admissible under federal statutes, where the rules of evidence heretofore applied in federal courts in suits in equity, or if under the rules of evidence in the courts of the state in which the federal court is held. Evidence admissible under any one branch of the tri-part test is admissible in the federal courts. Monarch Ins. Co. of Ohio v. Spach, 281 F.2d 401, 411 (5th Cir., 1960). *See* Wright & Miller, Federal Practice and Procedure: Civil § 2403.

■■ Evidence of good character is admissible in Georgia under the terms of Georgia Code Annotated, § 38–202, which provides:

"The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."

The scope and application of § 38–202 in actions defended on the grounds of

fraud is shown in Lawler v. Life Ins. Co. of Georgia, 90 Ga.App. 481, 83 S.E. 2d 281 (1954). The court there held:

". . . In Georgia, when a party is charged with fraud or acts of moral delinquency, the good character of the party is admissible in evidence to rebut it. McNabb v. Lockhart & Thomas, 18 Ga. 495; Ricks v. State, 70 Ga. App. 395, 28 S.E.2d 303 and cases cited; Metropolitan Life Ins. Co. v. Marshall, 65 Ga.App. 696(6), 16 S.E.2d 33; McClure v. State Banking Co., 6 Ga.App. 303, 65 S.E. 33; Code Ann. § 38–202; 78 A.L.R. 650."

While reversing on the issue of whether character evidence *alone* could rebut direct evidence of fraud, the Supreme Court of Georgia specifically approved this evidentiary holding. Life Ins. Co. of Georgia v. Lawler, 211 Ga. 246, 85 S. E.2d 1, 5 (1954). Kilgore's use of character witnesses directed to his reputation in the community in this action defended on the grounds of fraud was, therefore, proper. *See,* generally, McCormick on Evidence, § 159.

 Could the government properly attempt to inquire of Kilgore's character witnesses whether the community at large had heard of Kilgore's plea of nolo contendere to the tax fraud indictment? We think the answer is clearly that they could. Once character evidence has been admitted it simply and unnecessarily hampers the adversary process's search for truth to refuse cross-examination along these lines. Material and past occurrences may be used on the cross-examination of character witnesses to the extent of their awareness of reputation, which would be improper if asked of a criminal defendant or to impeach the witness himself. See Brown v. Coating Specialists, 465 F.2d 340 [1972]. The hearsay nature of reputation is subject to attack and challenge on its veracity by hearsay rumors of the subject of the reputation testimony's misconduct. Michelson v. United States, 335 U.S. 469, 478–479, 69 S.Ct. 213, 93 L.Ed. 168

(1946); United States v. Polack, 442 F. 2d 446 (3rd Cir., 1971); United States v. Williams, 141 U.S.App.D.C. 133, 436 F.2d 287 (1970); Aaron v. United States, 397 F.2d 584 (5th Cir., 1968); United States v. Dibrizzi, 393 F.2d 642 (2nd Cir., 1968); United States v. Gosser, 339 F.2d 102 (6th Cir., 1964), cert. den. sub nom Pinciotti v. United States, 382 U.S. 819, 86 S.Ct. 44, 15 L.Ed.2d 65 (1965). The limiting grounds on such cross-examination are vested within discretion of the district court and are of the timeliness of the occurrence and its relevancy. In *Michelson, supra,* the court in the context of a criminal case upheld impeachment of the defendant's character witnesses, stating:

". . . The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him. The prosecution may pursue the inquiry with contradictory witnesses [15] to show that damaging ru-

15. 1 Wigmore, Evidence (3d ed., 1940) § 58; Underhill, Criminal Evidence (4th ed., 1935) § 167; 1 Wharton, Criminal Evidence (11th ed., 1935) § 330.

mors, whether or not well-grounded, were afloat—for it is not the man that he is, but the name that he has which is put in issue. Another hazard is that his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion.[16] It may

16. A classic example in the books is a character witness in a trial for murder. She testified she grew up with defendant, knew his reputation for peace and quiet, and that it was good. On cross-examination she was asked if she had heard that the defendant had shot anybody and, if so, how many. She answered, "three or four," and gave the names of two but could not recall the names of the others. She

still insisted, however, that he was of "good character." The jury seems to have valued her information more highly than her judgment, and on appeal from conviction the cross-examination was held proper. People v. Laudiero, 192 N.Y. 304, 309, 85 N.E. 132. See also People v. Elliott, 163 N.Y. 11, 57 N.E. 103.

test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate. Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans."

335 U.S. at 479, 69 S.Ct. at 220.

 Kilgore asserts that Mickler v. Fahs, 243 F.2d 515 (5th Cir., 1957), controls this case. But he can take no solace in *Mickler* for while that was also a tax refund suit with a fraud element, there the government during the cross-examination of Mickler himself asked:

"Mr. Mickler, I am going to ask you if you are the same C. M. Mickler who was indicted on September 28, 1949, for income tax evasion for the years 1943, 1944 and 1945, and who entered a plea of nolo contendere to that charge and was convicted and sentenced to pay a fine of $5,000.00 for each of those years".

This court held that question prejudicial error for, "the same reasons which make the evidence of a plea of nolo contendere inadmissible as an admission . . . exclude it for purposes of impeachment." 243 F.2d at 517. Thus it can be seen that the error was to ask Mickler, himself the witness, the question in an attempt to impeach his credibility as a witness. Compare Brown v. Coating Specialists, *supra*. This was simply improper impeachment of a witness's credibility by a plea of nolo contendere. A

plea of nolo contendere is not a confession of guilt in any case but the case in which it is received. Lott v. United States, 367 U.S. 421, 81 S.Ct. 1563, 6 L. Ed.2d 940 (1961); North Carolina v. Alford, 400 U.S. 25, 35, n. 8, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Annotation 89 A.L.R.2d 579. It is well to remember the admonition of *Michelson, supra,* and avoid confusing the rule that a character witness may be cross-examined to test the scope of his knowledge of his proponent's character, including his knowledge of an arrest, whether or not it culminates in a conviction, with the rule that prohibits cross-examination going to the credibility of the witness by asking the witness whether he himself had been arrested. Since the accusation by indictment for tax fraud would be a proper subject of inquiry on the cross-examination of the character witnesses going to test the extent of their knowledge of Kilgore's reputation in the community, we can perceive no reason why Kilgore's plea of nolo contendere to the indictment should insulate his parade of character witnesses from this line of inquiry.

 But did the district court err in excluding a proper line of cross-examination? We have previously discussed the use of a plea of nolo contendere in this regard and differ with the district court on its ruling. We cannot, however, reverse the judgment of the district court and order a new trial. It is elemental that the district court is vested with wide discretion in the admission and scope of cross-examination of character witnesses in a civil action. The discretion, though not absolute, is not abused if the district court's decision to exclude is either harmless error, F.R.Civ.P. 61, or fully supportable for some other reason. If properly presented, we could not say the exclusion of this line of cross-examination was harmless error. The questions propounded, however, were not proper and no error was committed in their exclusion. Because of the inherently prejudicial im-

pact of this type of cross-examination, the district court is vested with wide discretion to judge what is permissible. Not only must the occurrence be relevant, temporally or otherwise, but the district court is first required to satisfy itself, out of the presence of the jury, to the veracity of the fact of the occurrence to be questioned. *Michelson, supra*; Aaron v. United States, supra, and cases cited. Moreover, it is uniformly recognized that the questioning of character witnesses to test the scope of their awareness of community reputation must be in proper form:

> "Since the whole inquiry . . . is calculated to ascertain the general talk of people about defendant, rather than the witness' own knowledge of him, the form of inquiry, 'Have you heard?' has general approval, and 'Do you know?' is not allowed." *Michelson, supra*, 335 U.S. at 482, 69 S.Ct. at 221.

And the questioner on cross-examination may not partake of a hypothetical question, i. e., "If you knew, would your opinion be changed?" Roberson v. United States, 237 F.2d 536 (5th Cir., 1956); Wilcox v. United States, 387 F.2d 60 (5th Cir., 1967); Gandy v. United States, 386 F.2d 516 (5th Cir., 1967); cert. den. 390 U.S. 1004, 88 S.Ct. 1246, 20 L.Ed.2d 104; Proctor v. United States, 100 F.2d 350 (5th Cir., 1939); United States v. Silverman, 430 F.2d 106, 125 (2nd Cir., 1970); Zaragoza-Almeida v. United States, 427 F.2d 1148 (9th Cir., 1970); Coleman v. United States, 137 U.S.App.D.C. 48, 420 F.2d 616 (1969); United States v. Wooden, 137 U.S.App.D.C. 1, 420 F.2d 251 (1969); United States v. Wolfson, 405 F.2d 779 (2nd Cir., 1968); United States v. Longfellow, 406 F.2d 415 (4th Cir., 1969); Kasper v. United States, 225 F.2d 275 (9th Cir., 1955). Annota-

tions, Cross-examination of Character Witnesses, 71 A.L.R. 1537, 47 A.L.R.2d 1258. McCormick, Evidence, § 158.

It is patent that the government's proffered line of cross-examination suffered this vice and was properly excluded as a hypothetical question.

 The judgment of the district court is affirmed.[1]

---

1. The government raises an alternative theory for reversal based on the contention that the district court's jury instructions were misleading as to the effect of the jury's verdict. When thus challenged jury instructions must be viewed as a whole, Delancey v. Motichek Towing Service, Inc., 427 F.2d 897, 901 (5th Cir., 1970). When so viewed, the court's instructions in this case were not misleading.