## 33569. FLETCHER v. FLETCHER.

HILL, Justice.

In 1970, Henry Fletcher executed a deed conveying his only asset, 1,127 acres of land in Irwin County, to his brother, Jehue Fletcher. Both brothers are now deceased. This is a suit by the administratrix of the estate of Henry Fletcher to set aside the deed on the grounds of mental incapacity of Henry and undue influence by Jehue. The defendant, the widow of Jehue Fletcher, appeals from the judgment entered upon the jury's verdict setting aside the conveyance.

The two brothers lived and farmed together all of their lives. Henry, born in 1896, never married. He died in 1976 at age 80. Jehue married the defendant in 1930 and she moved into the family homeplace in 1936. Although Henry had record ownership of the property in question from 1917 when he inherited it from his father until 1970 when he deeded it to his brother, Henry never returned the property for taxes. All taxes were paid and all business transactions concerning the property were

negotiated by Jehue. There was testimony that Jehue negotiated loans to be secured by the property, that Jehue later brought Henry to sign the notes and security deeds without reading them, and that the proceeds of these loans were deposited into Jehue's bank account. There was also testimony that sales of all crops from the property were conducted by Jehue and the proceeds were deposited into his bank account.

It was uncontradicted that Henry could neither read nor write, except his name. Henry attended school for only a year. Witnesses testified that Henry could not understand the simplest business transaction, that he at all times appeared retarded and that he had always been dependent on his brother, Jehue. Henry had no bank account. At his death he was without assets.

The deed was executed October 13, 1970, at the office of an Ocilla physician, now deceased, and witnessed by the physician and the clerk of the superior court. The deed recited as consideration "Five Dollars and other valuable consideration" and was filed for record two days later. This property had been Henry's only asset. It had a value over $350,000. Jehue died in June, 1972, and his will left everything he owned to his widow. As executrix, she took charge of the estate, sold equipment and livestock, filed an estate tax return, and executed and recorded a deed of assent from the estate to herself as beneficiary of all Jehue's real property, including the property now in question. The widow and Henry continued to live at the home place until Henry's death in January, 1976. This present suit was filed shortly thereafter, in March, 1976, by the administratrix of Henry Fletcher's estate.

1. The defendant contends the trial court erred in overruling her motions for directed verdict. As to Count 1 seeking to set aside the deed upon the grounds of mental incompetency, defendant argues that her direct testimony and that of the subscribing witness was unimpeached and demanded the conclusion that the grantor had sufficient mental capacity at the time of execution.

Witnesses for the plaintiff testified as to their opinions based upon their knowledge, observations and contacts with Henry throughout his life that he suffered

from habitual insanity, that he did not have a sane and natural mind and that he could not have understood the nature and circumstances of making a deed. This testimony was probative. *Hubbard v. Rutherford,* 148 Ga. 238 (1) (96 SE 327) (1918). The trial court did not err in overruling the defendant's motion for directed verdict on the issue of mental capacity. *Pantone v. Pantone,* 206 Ga. 305 (1, 2) (57 SE2d 77) (1950).

2. Evidence was presented by plaintiff's witnesses that Jehue had managed Henry's property for Jehue's benefit as well as Henry's, i.e., there was evidence of a confidential relationship between the two brothers, as well as great mental disparity between them. Code § 37-707. Testimony showed the value of the property transferred in this deed to be between $366,000 and $394,000. Where evidence is presented of a confidential relationship, the grantor being of weaker mentality and the grantee occupying the dominant position, an issue of fact is raised as to undue influence. *Tingle v. Harvill,* 228 Ga. 332 (5) (185 SE2d 539) (1971); *Parker v. Spurlin,* 227 Ga. 183 (3) (179 SE2d 251) (1971). See Code Ann. § 37-710. The trial court properly overruled defendant's motion for a directed verdict as to Count 2 of the complaint based upon undue influence.

3. The plaintiff, Henry Fletcher's administratrix, testified she did not learn of the deed now in question until after Henry's death in January, 1976. She received her letters of administration in March, 1976, and filed this suit the same month. The trial court did not err in overruling defendant's motion for directed verdict based upon the doctrine of laches. See *Spearman v. Jones,* 226 Ga. 27 (172 SE2d 602) (1970).

4. Before considering the defendant's several evidentiary objections, we find a general comment to be appropriate in this case. In testing mental capacity and in investigating undue influence and fraud, "courts are very liberal in admitting evidence." *Cato v. Hunt,* 112 Ga. 139, 142 (37 SE 183) (1901). "Anything calculated to throw any light upon the intention of the grantor or upon his mental condition is, in such an investigation, generally admissible." *Cato v. Hunt,* supra, 112 Ga. at 142-143. See also *Harper v. Harper,* 229 Ga. 583 (193 SE2d 616) (1972).

5. The trial court did not err in admitting testimony as to statements made by Jehue to the effect that Henry was incapable of transacting business. The defendant contends that such statements were hearsay and were thus inadmissible. Even if such evidence was not admissible to prove Henry's lack of mental capacity, it was admissible to show that Jehue had notice and knowledge of his brother's condition and to explain Jehue's conduct. Code Ann. § 38-302; *Joiner v. Joiner,* 225 Ga. 699 (3) (171 SE2d 297) (1969). Cf. *Pennington v. Perry,* 156 Ga. 103 (4) (118 SE 710) (1923). See also Code Ann. § 38-309.

6. The brothers signed timber leases in 1952 and in 1964. Each lease had annexed to it an indemnity agreement whereby Jehue guaranteed the ability of Henry to execute the lease and further promised to reimburse the lessee for any damage that might be sustained as a result of Henry's inability to execute the lease. The leases and annexed indemnity agreements were recorded.

The defendant contends that the leases were not properly authenticated and that their admission violated the best evidence rule. This contention overlooks Code Ann. § 38-641 which provides that a certified copy of an instrument affecting real property which has been properly recorded is admissible without the necessity of accounting for the original instrument. *McRae v. Stillwell, Millen & Co.,* 111 Ga. 65 (36 SE 604) (1900). See also Code Ann. § 29-415.

A witness to the lease testified as to negotiating it with Jehue and concerning the purpose of the indemnity agreement. His testimony, which went beyond the terms of the contracts, was admitted without objection by the defendant. These leases were admissible to show the confidential relationship between the brothers. The indemnity agreements were admissible for the same purposes as well as to explain the lease arrangements and the testimony concerning them.

7. The trial court admitted into evidence a certified copy of a suit brought in 1930 on Henry's behalf by next friend and consent judgment entered in that case in 1936 in which certain promissory notes executed in 1922 by

Henry were voided and a default judgment was set aside primarily based on Henry's mental incapacity. Although the case was terminated by consent judgment, it had been vigorously contested. See *Perry v. Fletcher,* 174 Ga. 180 (162 SE 285) (1932), and 46 Ga. App. 450 (167 SE 796) (1933).

There was testimony to the effect that at all times throughout Henry's life he had an unchanging mental condition as opposed to temporary periods of mental instability. See *Martin v. Martin,* 185 Ga. 349, 352 (195 SE 159) (1938); *Dicken v. Johnson,* 7 Ga. 484 (2) (1849). Numerous witnesses gave their opinion that Henry had always been retarded. One witness testified, without objection, that she had discussed the 1936 case with Jehue and that Jehue had at that time referred to Henry as incompetent. (See Division 5 above). The pleadings and judgment from this old case were pertinent to plaintiff's theory of the case that Henry had a continuous mental disorder and to Jehue's acknowledgment of that fact. We cannot say that the trial court committed reversible error in admitting this evidence. *Cato v. Hunt,* supra. (See Division 4 above).

8. The defendant enumerates as error the court admitting into evidence a certified copy of the marriage certificate between herself and Jehue dated in 1968. The defendant argues that her marital status was not relevant to any issue in the case. The relationship and marital status of a witness are relevant considerations for the jury. *Ga. S. & F. R. Co v. Ransom,* 5 Ga. App. 740 (5) (63 SE 525) (1908); Code § 38-1712.

9. The plaintiff introduced into evidence Schedule E of the estate tax return filed in behalf of the estate of Jehue Fletcher, signed by the defendant as executrix, showing $85,000 cash on hand at the time of Jehue's death. The defendant argues that this evidence prejudicially injected her financial status into the case. The defendant had previously testified that she and Jehue and Henry all had shared alike and equally in the economic benefits of the property. The fact that Jehue had considerable assets and Henry had none was admissible to impeach this "share alike" testimony and it was not error to admit this evidence. Code Ann. §§ 38-1802,

38-1803.

10. We have reviewed defendant's remaining enumerations of error and find no reversible error. *Judgment affirmed. All the Justices concur.*

ARGUED MAY 9, 1978 — DECIDED SEPTEMBER 5, 1978 — REHEARING DENIED SEPTEMBER 26, 1978.

*Harry Mixon, Reinhardt, Whitley & Sims, Glenn Whitley, Ray Rogers,* for appellant.

*Jay, Garden, Sherrell & Smith, Robert E. Sherrell, John E. Smith, III, Walters, Davis, Ellis & Smith, W. Emory Walters,* for appellee.