JAMES T. DILLARD, plaintiff in error, *v.* THE STATE OF GEORGIA, defendant in error.

(Atlanta, June Term, 1870.)

USING OBSCENE LANGUAGE IN PRESENCE OF FEMALE —CASE AT BAR.—If a man ask a female, in her presence, without provocation, "to go to bed with him," intending thereby to propose

Dillard v. The State of Georgia

illegal sexual intercourse, he is guilty of using obscene and vulgar language in the presence of a female, under section 4306 of the Revised Code of Georgia.

Criminal Law. Obscene Language. Before Judge Andrews. Oglethorpe County. January, 1870.

Dillard was charged before a Justice of the Peace with having "used obscene and vulgar language in the presence of a female, without provocation," in that "without provocation" he "asked Mary S. Sanders (the wife of William H. Sanders), to go to bed with him, the said James T. Dillard," *and said to her, at the same time, that she was "a God-damned liar." Waiving indictment by a grand jury, Dillard was tried and found guilty. What the evidence was does not appear. It was said in argument that when Dillard asked her to "go to bed" with him she called her husband and told him of it in Dillard's presence, and then he used the other words. Dillard's counsel moved to arrest judgment upon the ground that said words, as charged, were not "obscene and vulgar language," as is contemplated and made penal by section 4306 of the Revised Code of Georgia. The Justice overruled the motion and fined Dillard $100 and costs, and ordered him to jail for three months if the fine and costs were not paid. Without a formal certiorari, by consent, the motion in arrest of judgment was submitted to Judge Andrews for revision and reversal. He affirmed the decision of the Justice, and that is assigned as error.

J. D. Matthews for plaintiff in error, cited Revised Code, section 4, as to construction of Statutes. As to the meaning of "obscene and vulgar:" 2 Ch. Criminal Laws, 19, 20, 21; 1 Swann's (Tenn.) R., 42; 19 Harris' (Penn.) R., 416; 17 Mass., 336; Whar. Cr. L., Par. 351, 2548; 1 Bish. Cr. L., Par. 379.

W. G. Johnson, for the State, as to the meaning of obscene and vulgar, cited Webster's Dictionary; Trench on Words, 58 to 71; Schlegel's Lectures on Literature, 7; Johnson's Eng. Classics, title, Bucaccio Bono L. Dic.; 4 Bl. Com., 64 and 65, and Notes; 3 Wharton's Cr. L., sec. 2400; 1 Bish. Cr. L., sec. 379; 3 St. Trials, 519; 3 Burrows, 1438; 1 Rus. on Cr. 326; Bou. L. Dic. "Indecency:" 1 Swann (Tenn.) R., 42; 17 Mass. R., 336; 20 Peck, 216, 217; 7 Harris' (19 Penn.) R., 412; and said the judgment ought not to be arrested, because the jury found Dillard guilty, they being judges of the law and fact.

*McCAY, J.

There was no indictment in this case. The defendant, rather than await his trial before the Superior Court, waived indictment, and even a written accusation, and demanding a jury, was tried under the Act of 1868, on the proof. His only ground of defense is that the words proven are not obscene and vulgar words, in the sense of section 4306 of the Code.

Dillard v. The State of Georgia

We cannot think that the Legislature was aiming solely at the words, without reference to the thoughts or idea the words are intended to convey. There is not a single word in the language, however coarse, low or vulgar, that may not be and is not often used to convey proper and decent ideas, and it is a mawkish and really an indelicate and immodest sensitiveness that blushes at a word which may be used obscenely, but which the occasion and the context shows not to be so used. Words get their point and meaning almost entirely from the time, place, circumstances and intent with which they are used, and it seems to us a very unfair interpretation of this clause of the Code to say, that it is directed simply against the use of certain words which are by common consent banished from decent society. If there are any such words in our language they are very few, and as we have said, even they are only obscene and vulgar accordingly as they convey obscene and vulgar ideas.

This statute does not stand upon the footing of statutes against public indecency. Its object is not to keep pure the public morals. It is to be found in that chapter of the Code which punishes private wrongs, and forms a part of the same clause which makes it a penal offence to use opprobrious and abusive language to another. It is intended to protect females from insult; to furnish to the friends of a female whose modesty has been unlawfully shocked, or whose feelings have been wounded, by the use in her presence of obscene and vulgar language, some other remedy than that which nature dictates, to-wit, club law. And the statute is to be construed and understood in the light of its object. *What higher insult to a virtuous woman can be conceived of than the language used in this case?

It is in our judgment not only obscene and vulgar in the idea which it conveys and in the insult which it includes, but, we must say, that the very terms used are obscene and vulgar. It is not even wrapped up in decent words. It would be a coarse and vulgar phrase among vicious and vulgar people. It is not only obscene and vulgar in the thought it suggests, but it is obscene and vulgar in the words to suggest them.

We think Justice Young was right, and we affirm the judgment of Judge Andrews in refusing to sustain the certiorari.

WARNER, J., concurring.

The 4306th section of the Code declares that "any person who shall, without provocation, use to or of another and in his presence opprobrious words or abusive language tending to cause a breach of the peace, or who shall, in like manner, use obscene and vulgar language in the presence of a female, shall be guilty of a misdemeanor and on conviction be punished," etc. The following words, spoken by the defendant to, and in the presence of a female, without provocation, "Will

you go to bed with me?" was obscene and vulgar language within the meaning of the statute. The intention of the defendant who used the language, and the purpose for which he used it when addressed to a female, constitutes the offense; and the language used by the defendant, with the intention and for the purpose for which he used it, when addressed to Mrs. Sanders, a married lady, was both obscene and vulgar, and such, in my judgment, is the fair interpretation to be given to the language. The intention of the defendant in using the language, as well as the purpose for which he used it, necessarily makes it both obscene and vulgar on his part, when addressed to any decent female, and he should not be allowed to protect himself under the mere form of words used by him, when he intended to convey by the use of them an obscene and vulgar proposition.

282    \*BROWN, C. J., concurring.

I concur in the judgment of the Court in this case, but not upon the ground, nor for the reasons given by the majority. The record shows that the defendant was arraigned for the opprobrious and abusive language, as well as for the language held by the majority of the Court to be obscene and vulgar. To say to another, "you are a God d——n liar," has I believe, been uniformly held to be opprobrious language, tending to a breach of the peace, and is clearly within the letter of the statute.

But the language "go to bed with me" is in itself neither obscene nor vulgar, and has never before been so held in any Court, as far as I know or believe. Taken in connection with the surrounding circumstances in this case, the conclusion is very natural, that the defendant intended this as a proposition to violate chastity. And there would be no difficulty in maintaining an indictment upon it, for making such a proposition, if that were made criminal by the statute. But I am aware of no provision in the Penal Code making it criminal to submit such a proposition if nothing more is done. And as I am bound to construe criminal statutes strictly, and as there is nothing obscene or vulgar in the language itself, though it makes a proposition that ought, in my opinion, to be criminal, I do not feel at liberty to embrace it by construction.

Till a very recent period I recollect no law of this State making it criminal to use obscene or vulgar language in presence of a female. In the passage of this law, the Legislature has taken a step in the right direction. But I do not think it the proper province of the Courts to extend this penal statute, by forbidden rules of construction, so as to embrace offenses against morality, decency, or good breeding, which the Legislature has not thought proper to embrace. If that authority should pass an Act making all such propositions criminal, I shall take great pleasure in executing it, while I re-

main upon the Bench. But I do not feel that I possess that power as a Judge.

283     *Remedial statutes governing civil rights are to be construed liberally, as the majority of this Court construe this statute, so as to suppress the mischief and advance the remedy. But I am taught by all the books that no such rule prevails in the construction of penal statutes; and I think it impossible to sustain the judgment of the majority of the Court in this case, placing it upon the ground where they place it, without the application of a rule of liberal construction, to this penal enact- ·ment.

When we apply the strict rules required in the construction of penal laws to this statute, I think it very clear that language, to be indictable under it, must be obscene and vulgar in its ordinary acceptation, and must convey an obscene and vulgar idea; and it is not sufficient to sustain the indictment that language decent in itself, conveys in the particular case an obscene and vulgar idea. The rule as already stated would be different if the statute were a remedial one, applicable to civil cases.

I am unable to view this decision of the majority of the Court, in any other light than that it is legislation by construction, making that criminal which is not criminal under the statute, when construed by well-known and authoritative rules. While I agree that the legislation of my brethren in this case may be very good legislation, I do not feel at liberty to participate in it, as that authority belongs to another department of the govern-. ment.