#### 4131. PARKER *v.* THE STATE.

1. On the trial of one accused of the offense of seduction it is competent for the State to show (as a circumstance evidencing the existence of an engagement to marry) that the female alleged to have been seduced made preparations for her marriage, and sent out invitations to the wedding.

2. The fact that the female alleged to have been seduced has a living child, as well as the fact that the accused endeavored to induce her to take medicine for the purpose of causing an abortion, while in themselves not sufficient to prove seduction, are both circumstances competent for the purpose of proving that the accused had carnal intercourse with her, which is an essential ingredient of the offense of seduction.

3. As illustrating the interest and credibility of a witness, and for the purpose of impeachment, it is competent to show that the witness made an effort to improperly influence and suborn another witness in the case. It is not error for a trial judge to permit a witness to be interrogated as to any matter pertinent to the issue, although the question sought to be asked, or the answer thereto, either or both, may be prejudicial, when counsel who seeks to ask the question states in his place that he expects to prove the fact which his question seeks to elicit. The issue as to whether a question is asked without a bona fide expectation of receiving the answer apparently expected, and merely for the purpose of prejudicing the opposite party before the jury, or whether the question is asked in good faith, must in every case be left to the discretion of the trial judge, and this discretion will not be controlled, unless it is manifestly abused.

4. Where the presence of a witness in a criminal case is waived, and it is agreed, with the approval of the court, that the contents of an affidavit, previously given by the witness, be used, instead of his oral testimony, the statements in the affidavit must be considered by the jury just as if they had been delivered by the witness from the stand, and can not be captiously rejected, either in whole or in part. Where the presence of a witness is waived, and it is agreed that his testimony shall be taken by affidavit, the jury should consider the testimony just as if the witness had orally testified in their presence, and believe him, unless he is impeached or discredited by other testimony. Consequently it was error for the court to charge, as to the contents of such an affidavit, "You may believe as much of it as you please, or as little of it as you please."

5. In a trial for seduction, the maintenance and education of a child which may have been the result of the illicit connection is not involved, nor is its legitimacy affected by the verdict in the case. The prosecution for seduction is for the punishment of a public wrong, and not for redress of a private injury. It was error, therefore, for the court to allow the solicitor-general, over the objections of the accused, to urge that the defendant should be convicted of seduction, in order that the child might have a legitimate father, and because the female alleged to have been seduced, and who would have to raise and maintain the child, should be protected.

DECIDED JUNE 5, 1912.

Indictment for seduction; from DeKalb superior court—Judge Roan. February 24, 1912.

*John W. Moore, J. E. & L. F. McClelland,* for plaintiff in error. *C. S. Reid,* solicitor-general, *William Schley Howard, L. J. Steele,* contra.

RUSSELL, J.   The plaintiff in error was convicted of the offense of seduction, and he excepts to the judgment overruling his motion for a new trial.   As the case turns upon some of the special assignments of error, we shall express no opinion upon the testimony. It suffices to say that the evidence warranted the conviction and the sentence.   But though the defendant be accused of a most horrible crime (and we can imagine no fouler criminal than one guilty of seduction), he is entitled to a fair and impartial trial, according to the rules of the law; and the just resentment and passion which is necessarily aroused by the very character of the charge should not be permitted to be inflamed so as to prejudice the rights of the accused, or place upon him a burden which the law does not impose.

We are clear that as to most of the exceptions there was no error. There was none in the admission of the testimony of which complaint was made, nor in the ruling upon the question which the solicitor-general was permitted to ask.   But we think that in charging the jury the learned trial judge, inadvertently perhaps, depreciated the most vitally important testimony which was at the defendant's command, and that he perhaps underestimated the effect of the language used in the concluding argument of the State's counsel, which submitted to the jury issues foreign to the case, but the suggestion of which was manifestly calculated to weigh heavily against the accused.

1, 2.   The first and second headnotes are self-explanatory.

3.   It is alleged in the 4th ground of the motion for a new trial that the solicitor-general asked G. E. Lanier: "Didn't you go to Mr. Lee Cheek's with your brother on Sunday before this case was tried the last time, and didn't you or your brother pull out money in the presence of Mr. Cheek and offer it to him, and say to him that you would pay him money if he would go to Decatur on Tuesday and swear that Miss Tedder's character was bad? Didn't Mr. Cheek tell you that he was not the man that could be bought to swear a lie?   Did you not try to get Mr. Hand to go to Decatur and swear against this young lady?"   The movant objected to these questions at the time, and assigns the same as error.   He contended then as follows:   By Mr. McClelland, counsel for the defendant:   "My objection is this.   He proposes to ask this witness, in the presence of the jury, if he did not go to

Mr. Lee Cheek's house before the last trial and offer him some money. He is not going to try and make any proof of that, but he is merely going to ask that question so as to discredit the witness before the jury. I object to his asking that question unless he is going to prove that." By the court: "Do you expect to prove that by Mr. Cheek?" By Mr. Howard: "Yes, I expect to show that they came up there on Sunday evening and made this offer." The court then allowed the solicitor, in the presence of the jury, to ask the questions above set out, to all of which the witness answered, "No."

Of course, if the solicitor-general was asking these questions merely for the purpose of discrediting the witness, without any bona fide intention of proving the facts to which he referred, simply hoping to leave a trail of indefinable prejudice in the minds of the jury after they had retired to their room, his conduct would have been most reprehensible. But neither the trial court nor this court can lightly assume that a member of the bar, of undoubted standing in his profession, would be guilty of such practice. The trial judge relied upon the statement that the facts which were the subject-matter of the discussion would be established during the course of the trial, or at least that the counsel expected to prove the facts to which he referred by his question; and his ruling, permitting the question to be asked, was based upon this assumption. We have no doubt that the fact that witnesses were not introduced to testify upon the point was due to oversight; but in any event, when the issue of good faith is raised under such circumstances as those presented by this record, it must be determined by the trial judge, in the exercise of his discretion, and that discretion will not be interfered with, unless it is perfectly plain that there was an abuse of discretion.

4. In the 5th ground of the motion for a new trial error is assigned upon the instruction of the judge as to the affidavit of one Tuggle, who was not present at the trial, but whose testimony was submitted, by agreement, in the form of an affidavit which he had previously made. In view of the legal requirement that witnesses in criminal cases shall testify orally and in the presence of the defendant, and the fact that exceptions to the enforcement of this rule are extremely rare, it can be readily seen that the reference of the judge to the affiant Tuggle, by name, would naturally arrest and fix the attention of the jury upon him, and made it even more

than usually important that any instruction with reference to his testimony should be free from error. We have often wondered if too much importance were not sometimes attached to the precise verbiage employed by the trial judges in instructions to juries, and if expressions were not considered harmful which perhaps the jury did not even remember after they had retired to consider their verdict. There can be no doubt that when the judge puts his instructions in abstract terms, the effect of nice verbal criticism is greatly minimized. But when the judge calls a witness by name, and especially when, as in this case, he is the only one whose testimony was submitted in his absence and by affidavit, it can, we think, be safely assumed that the jury not only heard, but remembered what was said about this particular witness, and, therefore, if the instructions were erroneous, the result would be necessarily and unquestionably harmful to the accused. In the present case the judge charged as follows: "In criminal cases, each and every witness has to testify before the jury in person. They can not be examined by interrogatories as in civil cases, unless it is by agreement, but in criminal cases every witness must testify in the presence of the jury, so that the jury may look at them when they testify, unless it is agreed to the contrary, and see their manner of testifying, their manner when being examined, or cross-examined, their deportment upon the stand, and all about it. You have seen all of the witnesses and looked at each witness, let it be man or woman, male or female, as the case may be. They have all been before you, except one witness, whose affidavit has been read to you, and it was agreed between the counsel for the State and defendant that this witness, Tuggle, would have testified that way if he had been here and had been sworn and put on the stand, and you would consider it just as if he had testified it on the stand, because that is agreed upon. You may believe as much of it as you please, or as little of it as you please, and deal with it as if he had come here in person and testified. It is for you, gentlemen, to say how much of each witness's testimony you will believe. You are to weigh all the testimony, examine it, and from it glean what you believe to be the truth."

A portion of this instruction, if considered apart from its context, is unobjectionable, but when the instruction is considered as a whole, the jury were told, in terms they could not misunderstand that they might believe as much of Tuggle's testimony as they

pleased, or as little of it as they pleased. Of course the jury could not thus captiously dispose of the testimony of any witness. And as the judge had referred in the same connection to the fact that witnesses usually appeared upon the stand, and that the jury could test their credibility by their manner of testimony, their manner upon examination and cross-examination, and their deportment upon the stand, and then to the fact that Tuggle was absent and his testimony by affidavit had only been admitted by agreement, the jury may have thought that this depreciation of Tuggle's testimony was due to the fact that he was not present, and they had not had the opportunity of seeing and judging him by his appearance and manner. It can not be denied that the effect of the charge greatly depreciated the testimony of the witness, and, in any case, this error requires the grant of a new trial. In the present case the error was particularly harmful, for if the testimony of Tuggle was to be believed, the defendant did not commit the offense of seduction, because the prosecutrix had fallen from virtue before Parker had sexual intercourse with her. We have no doubt that the error of the learned judge was due to mere inadvertence, but it was not corrected in any portion of his instructions, and the effect of the words used is so unmistakable that it could not fail to influence the jury, and demands the grant of a new trial.

5. The 6th ground of the motion for new trial assigns error upon the argument of the solicitor-general, which the court permitted over objection of defendant's counsel. The defendant moved for a mistrial, but this motion was overruled, without even any instruction to the jury that they should not consider the objectionable argument. The solicitor-general argued as follows: "Miss Tedder is the mother of a three-year-old child. Parker is its daddy. By turning him loose he goes scot-free, and she will have the care of raising and maintaining this outcast. It is your duty to protect this woman, and as well see that this child has a legitimate father." We do not think that the court was required to order a mistrial, but the argument was improper, and the court should have so told the jury, and have withdrawn it from their consideration. In a trial for seduction the maintenance and education of a child which may have been the result of the illicit connection is not involved, nor is its legitimacy affected by the verdict. The prosecution for seduction is for the punishment of a

public wrong, and not for redress of a private injury. It was error, therefore, for the court to allow the solicitor-general, over the objection of the accused, to urge that the defendant should be convicted of seduction, in order that the child might have a legitimate father, and because the female alleged to have been seduced, and who would have to raise and maintain the child, should be protected.         *Judgment reversed.*