### McBRIDE *v.* THE STATE.

1. Where it is sought to impeach a witness by disproving the facts testified to by him, by proof of contradictory statements previously made by him as to matters relevant to his testimony and to the case, and by evidence as to his general bad character, evidence of his general good character is admissible to sustain him, and the jury in passing on his credibility may consider the evidence as to his good character in connection with all three of the methods by which it is sought to impeach him. The portions of the charge in respect to impeachment of witnesses are not subject to the criticisms made thereon in the first ground of the motion for a new trial.

2. The instructions as to the presumption of malice upon proof of the homicide with a deadly weapon were not erroneous for any reason assigned.

3. A ground of the motion complains that the court erred as follows: "After the jury had retired to consider their verdict, they returned into the court-room with the request that they be furnished the stenographic report of certain parts of the defendant's statement; whereupon the court instructed the foreman as follows: 'Well, I couldn't let any notes or written evidence go out before you in this case. You will have to rely on the testimony you have heard.'" So much of the instruction as directed the jury that "You will have to rely on the testimony you have heard" is not cause for a new trial on the ground that it "withdrew from the consideration of the jury the defendant's statement." The charge of the court in respect to the prisoner's statement was clear, full, and correct, and therefore it was not probable that the jury could understand that the court, in using the language last quoted, intended to withdraw from their consideration the statement made to them by the accused.

4. It was not error to refuse to allow a witness for the accused to testify that after the accused had gone a quarter of a mile from the place of the homicide he said "he would go back and stay till somebody came." He did not go back. The declaration would have been merely a self-serving one, and was not a part of the res gestæ.

5. Nor was it error to refuse to allow a witness to answer the following question: "If a man, say, between two and three o'clock, had been so drunk that he couldn't sit up in a buggy, you think at four-thirty you would have been able to smell whisky on him?" Moreover, it does not appear what the witness's answer would have been.

6. The evidence authorized the verdict, and the court did not err in refusing a new trial.

No. 1808. April 13, 1920.

Indictment for murder. Before Judge Howard. Muscogee superior court. November 29, 1919.

*George C. Palmer, Frank D. Foley,* and *T. T. Miller,* for plaintiff in error.

*Clifford Walker, attorney-general, C. F. McLaughlin, solicitor-general,* and *M. C. Bennet,* contra.

Fish, C. J. Under an indictment charging J. T. McBride with the murder of Joe Bailey, he was found guilty as charged, with a recommendation of life imprisonment. He excepted to the overruling of his motion for a new trial. One of the grounds of the motion is that the court erred in charging the jury as follows: "A witness may be impeached by disproving the facts testified to by him. A witness may be impeached by contradictory state-

ments previously made by him as to matters relevant to his testimony and to the case. A witness may be impeached by evidence as to his general bad character. A witness may be sustained by similar proof of good character. Whether a witness has been impeached is for a jury to determine from all the evidence in the case, after considering the witness's testimony and the testimony of the other witnesses, and the evidence of witnesses who may testify in his behalf, if any. You are the sole judges of the credibility of the witnesses, as I have already said. Whether a witness has been impeached is a question for your determination. You can believe a witness or witnesses under investigation or you can believe the other witness or witnesses, as I have stated. After all it is a question for your sole determination." One of the grounds of error assigned upon this instruction is that "It is not true, 'when it is sought to impeach a witness by either of these modes, the credibility of a witness may be restored by proof of general good character.'" The court did not so expressly instruct the jury, nor is the language of the instruction fairly susceptible of such construction. The charge followed the statement of the three methods for the impeachment of witnesses, as prescribed by the Civil Code, §§ 5880, 5881, 5882. The instruction that "A witness may be sustained by similar proof of good character" immediately follows the statement that "A witness may be impeached by evidence as to his general bad character." And it may be that the charge that "a witness may be sustained by similar proof of good character" should properly be construed as referring to a witness sought to be impeached by evidence of his bad character, or, at least, to one so sought to be impeached and also by proof of contradictory statements previously made by him. However, if the proper construction of the language used by the court is that, where it is sought to impeach a witness by all of the three methods stated, the witness may be sustained by proof of good character, in other words, that evidence of his good character may be considered by the jury in connection with one or more of the methods by which it is sought to impeach him, then such instruction is not erroneous. The Civil Code, § 5881, provides, when it is sought to impeach a witness by proof of contradictory statements previously made by him, he may be sustained by proof of general good character. And similar proof of

character is admissible to sustain a witness sought to be impeached by proof of general bad character. § 5882. In *McEwen* v. *Springfield*, 64 *Ga.* 160, it was held: "It having been sought to impeach a witness both by disproving facts testified to by him, and also by proof of contradictory statements, and to sustain him by evidence of good character, it was error to limit the effect of such sustaining evidence by charging that 'if a fact or facts testified to by a witness be disproved to the satisfaction of the jury, then evidence of general good character should not be treated as re-establishing such disproved facts.'" It was held, in *Pulliam* v. *Cantrell*, 77 *Ga.* 563 (3 S. E. 280) : "Under the facts of this case, there was no error in charging the three modes of impeaching a witness laid down in the code, and in stating that the general good character of the witness, if proved, might be considered to sustain the witness, by evidence as to the facts themselves, or by proof of general good character, having also charged as to conflicting testimony, and that all the testimony was for the consideration of the jury." The rulings made in the two cases cited have never been overruled, though it has been held in *Miller* v. *Western & Atlantic R. Co.*, 93 *Ga.* 480 (21 S. E. 52), that "A witness who is not impeached otherwise than by disproving the truth of his evidence, or by testimony tending to disprove it, can not be supported by proof of his general good character." That ruling has been followed in *Bell* v. *State*, 100 *Ga.* 78 (27 S. E. 669) ; *Anderson* v. *Southern Railway Co.*, 107 *Ga.* 500 (33 S. E. 644) ; *Smith* v. *State*, 147 *Ga.* 689 (95 S. E. 281). These cases and those cited in them are not in conflict with the ruling here made.

Error is assigned, in the motion for a new trial, upon the following excerpts from the judge's charge: "In cases of homicide, I charge you further that where the killing is shown to have been by the defendant on trial by the use of a deadly weapon, beyond a reasonable doubt, or is admitted, and all the evidence adduced to establish it shows neither mitigation nor justification nor excuse, malice will be presumed, from proof of the homicide, that the killing was murder; but this presumption is a rebuttable one, and may be overcome by evidence of excuse, or alleviation, or justification." "In other words, the law presumes every homicide resulting from the use of a deadly weapon to be felonious, until the contrary appears from circumstances of excuse or justification

or alleviation; and it is incumbent upon the defendant to make out such circumstances to the satisfaction of the jury, unless they should arise out of the evidence produced against him." The evidence submitted by the State, if credible, showed that the accused shot the deceased with a pistol, killing him, without circumstances of mitigation or justification; and a witness for the State testified that, a few days after the homicide, he asked the accused "if he was the one that shot and killed Joe Bailey. He says, 'I am the one.' I asked him if he was Dolly McBride's son, and he said, 'No, John McBride's,' and made no explanation of what caused him to shoot him, and I didn't ask him." There was no admission of the accused in evidence that he killed the deceased which was coupled with any statement as to circumstances of alleviation, excuse or justification. The evidence in behalf of the accused and his statement, if true, justified the killing. Under the facts of the case none of the following assignments of error upon these instructions was meritorious, viz.: (a) "Because the very evidence which proved that the defendant committed the homicide also showed complete justification." (b) "Because the State was also dependent upon the admission of the defendant that he committed the homicide, which also showed complete justification, and that it was done in self-defense." (c) "The burden in this case was never shifted from the State to the defendant, because all the evidence of the killing showed that the defendant killed the deceased in self-defense." (d) "Because the court failed to instruct the jury that excuse, alleviation, or justification may appear from the defendant's statement to the jury."

The rulings announced in the third, fourth, fifth, and sixth headnotes require no elaboration.

*Judgment affirmed. All the Justices concur.*