WIMBERLY, trustee, *v.* TONEY *et al.*

No. 8795.   August 13, 1932.

*Carl T. Hudgins,* for plaintiff.  *B. H. Burgess,* for defendants.

RUSSELL, C. J.  (After stating the foregoing facts.)

The first special ground of the motion for a new trial complains that the court charged the jury.: "I charge you gentlemen that a bona fide sale of property by a person, even if he be insolvent at the time of such sale, whereby he receives valuable consideration for the property, and provided he has no intention to delay or defraud his creditors, which was known to the grantee, is valid and can not be set aside by creditors of the vendor, even though the sale be made to a near relative of the vendor." This charge, when construed in conection with the charge as a whole, is not subject to the criticism: (a) That the court omitted to charge in connection therewith that the transaction would be void as against creditors if J. W. Toney had reasonable grounds to suspect that the intention of W. M. Toney was to hinder, delay, or defraud his creditors. (b) That the language "even though the sale be made to a near relative" tended to instruct the jury to disregard the close relationship existing between the parties, whereas "the law says that such transactions between near relatives are to be scanned with care, and slight evidence of fraud will be sufficient to set aside transactions between near relatives when the rights of creditors are involved." The court could not properly have charged the language just quoted, without justly subjecting his instruction to the objection that it would have been extremely argumentative. (c) That it was not adjusted to the facts of the case, and that it was prejudicial to the movant, by reason of the fact that J. W. Toney, the father, testified: "Yes, my son and myself talked over the situation while the Hunter attachment was pending. I preferred to buy a part of [the property involved]. I was afraid I would not get my money if the other creditors took action. I thought I would have trouble in getting my money. The Hunter levy was still on them until the 14th. He had an attachment that had been levied. . . It was after the

14th that I bought the cattle. If the sale had gone on as advertised [W. M. Toney had advertised his property for a private auction sale to be held on May 15, 1928, which was the day following the transaction sought to be avoided], my son was to pay me what he owed me out of the sale. As to whether I knew at the time that he had promised to pay the other men's feed accounts, no, sir, I did not know that. I guess he had. I reckon he had, but I did not know it. I think he offered to sell them some of the cattle." This instruction did not, as is contended, eliminate from the case the question whether the transaction between the father and the son was in good faith, and under this instruction it was a question of fact, which the court submitted to the jury, whether the purpose of the father was to hinder, delay, or defraud creditors, or whether it was a bona fide transaction on the part of a son who was honestly and justly indebted to his father, as contended by the witness, in which case the son had the right, as every debtor has, to prefer one creditor rather than another in the disposition of his property before it is subject to any lien. Though the father may have had knowledge of the fact that other creditors of W. M. Toney were likely to take action to subject the property to their demands (and it appears from the evidence that Hunter had already levied an attachment, but this lien was satisfied by the father), this would not prevent him, if the debt his son owed him was justly due, from buying the property from his son at a fair valuation in extinguishment of the debt the son truly owed him.

■ The court instructed the jury: "If, on the other hand, you should find that at the time the sale or transfer of this property from W. M. Toney to J. W. Toney was made, W. M. Toney was insolvent, and that said transfer was voluntary and not for a valuable consideration, then I charge you that such transfer made under such circumstances is fraudulent in law as against the creditors of W. M. Toney; that is to say, under our law, the following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, namely, every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction for a valuable consideration, without notice or ground for reasonable suspicion,

shall be valid." This instruction would seem to correct the alleged error of the charge complained of in the first special ground, supra, being the converse of the proposition stated therein; but movant complains that this charge was confusing to the jury, for the reason that two separate and distinct propositions of law relative to fraudulent transfers were given : first, that a transaction without consideration is void as to creditors; and second, that any transfer for the purpose of delaying or defrauding creditors is void if the purpose thereof is known to the person taking, the latter proposition being given in seeming explanation of the first; and that, the theory of the case not being solely one of voluntary conveyance, the charge was of necessity misleading to the jury. We see nothing in the instruction which could have confused or misled the jury, and consequently we are of the opinion that the assignment of error in this ground is without merit.

In the sixth ground it is contended that the court erred in submitting to the jury the question of fact whether the defendant W. M. Toney was insolvent; and that, if the question of insolvency was submitted, the court should have defined the meaning of the term insolvent. Upon the principle that it is never error for the court to refuse to direct a verdict, we can not perceive how a mere statement that insolvency is a question of fact could in any event be such an error as to afford ground for a reversal.

The seventh ground is based upon the rather unusual contention that the court withdrew two instructions which he had previously given, movant contending that the instruction which was withdrawn was demanded under the evidence and should not have been withdrawn. This instruction was as follows: "If you believe from the evidence in this case that the transfer or sale made by W. M. Toney was made on the part of W. M. Toney to delay or defraud his creditors, then I charge you that such sale would be void in law, and you would be authorized to find the same should be canceled." "I want to withdraw that if you believe from the evidence in this case that the transfer or sale was made on the part of W. M. Toney to delay or defraud his creditors, then I charge you that such sale was void in law and you should be authorized to find that same should be canceled. I withdraw that and strike that out." The court did not err in withdrawing the instruction quoted. It is obvious that it would have been improper to give either one

of the instructions, because both omitted any reference to the validity or invalidity of the debt claimed by J. W. Toney, and both omitted any instruction as to whether J. W. Toney participated in the intention to delay or defraud creditors. The effect of either instruction which the plaintiff says should not have been withdrawn would have been the same as the direction of a verdict for the plaintiff.

■ In the eighth ground complaint is made that the court erred in permitting J. W. Toney, on cross-examination to testify: "No, there was not any conspiracy between myself and Willie Mert, my son, to defraud any one by this transaction. No, there was not any conspiracy existing between me and W. M. Toney, my son, for me to save part of this property for W. M. Toney's benefit in order to keep it from other creditors." The only objection offered was "whether or not a conspiracy existed was a question for the jury." Conceding that the existence or non-existence of a conspiracy is always a question for the jury, we are unable to perceive why the witness could not testify upon this point. The answer of the witness may possibly be subject to some objection, but not to the objection urged at the time the evidence was before the court.

■ Ground 9 is too defective to present anything for the consideration of this court, in that there is no allegation which points out whether the admission of the evidence stated in this ground was contrary to law, or in what way, if any, the evidence was prejudicial or injurious to the moving party. When the evidence was offered, the only objection stated in this ground was that the evidence was irrelevant and immaterial, and that J. W. Toney's character was not in issue. It has frequently been held by this court that an objection to evidence as irrelevant and immaterial is of no potency. J. W. Toney stood charged in this case with a fraudulent transaction. Unless the jury believed that he participated in delaying and defrauding the creditors of W. M. Toney, the transaction could not be set aside. So we are of the opinion that his character was in issue, and that it might be sustained by any circumstances by which it might be shown, if it could be, that his character was such as to rebut the presumption against committing a fraudulent act. *German American Mutual Life Asso.* v. *Farley,* 102 *Ga.* 720 (5) (29 S. E. 615).

■ The tenth ground complains that counsel for J. W. Toney,

on cross-examination, was permitted to ask a witness for plaintiff, W. J. Croswell, and the witness was permitted to answer, as to J. W. Toney's reputation for fair dealings and honesty. The testimony might have been subject to an objection of another kind, but the only objection made at the time the question was asked and the answer given was that "plaintiff objected upon the ground that there had been no attack on J. W. Toney's general business dealings." For the reasons stated in the preceding division of this opinion, the court did not err in admitting this testimony. J. W. Toney stood charged in the petition in this case with a fraudulent transaction. The defendant by his petition sought to impeach his purchase from his son, W. M. Toney, and to set it aside upon the ground that it was executed in perpetration of a fraud and a conspiracy between the father and the son to hinder, delay, and defraud creditors of the son, the vendor of the property which the defendant in his answer declared he had bought in the utmost good faith. "When an effort is made to impeach a contract of insurance upon the ground that it was issued in consequence of the perpetration of a fraud by the assured upon the insurer, evidence of the good character of the assured is admissible to support his bona fides in the transaction." *German American Life Asso.* v. *Farley,* supra. In *McNabb* v. *Lockhart,* 18 *Ga.* 495 (11), 512, it was said: "In civil cases such evidence is always admissible when the nature of the action involves the general character of the party, or goes directly to affect it. And whenever a particular trait of character is involved in the matter charged against the defendant, there the character of the party, in that particular trait, is put in issue, and may be given in evidence." In *Mays* v. *Mays,* 153 *Ga.* 835 (113 S. E. 154), Mrs. Mays, as administratrix of her late husband, filed a petition asking to set aside, annul, and cancel certain deeds which her stepson, John Billie Mays, claimed were genuine conveyances, but which petitioner alleged in one count of the petition to be forgeries. On the trial it appears that evidence was introduced as to the general character of the defendant, and exception was taken to the admission of this testimony. But Justice Gilbert, delivering the opinion of the court, ruled: "In the sixth and seventh grounds of the motion for a new trial movant complains that the court erred in permitting several witnesses to testify, in substance, that they knew the general character of the defendant, and that it was

good. The objection made at the time was that such evidence was irrelevant and immaterial, and that 'evidence as to character is not admissible in civil cases like this one.' *Held,* that the admission of this evidence, in view of the charge made against the defendant, was not error. Civil Code (1910), 5475." We are of the opinion that the character of the defendant, J. W. Toney, was in issue in this case, and that it might be sustained even by circumstances which might tend to support it. In a proceeding of the kind now before us, where a conveyance between near relatives is attacked upon the ground of fraud, and especially where the law requires the jury to examine every circumstance with care and caution (with a presumption growing out of the relationship that the transaction, unless satisfactorily explained, may be deemed to be fraudulent), one who is charged with having engaged in a fraud and conspiracy for the purpose of hindering, delaying, and defrauding honest creditors, should be allowed, if he can, to give the jury all facts and circumstances which may properly tend to rebut the presumption of fraud and conspiracy.

The evidence authorized the jury to find in favor of J. W. Toney.

The court did not err in overruling the motion for a new trial. *Judgment affirmed. All the Justices concur.*