30172. RICKS *v.* THE STATE.

DECIDED NOVEMBER 10, 1943. ADHERED TO ON REHEARING DECEMBER 20, 1943.

*Thomas A. Jacobs Jr.,* for plaintiff in error.

O. L. Long, *solicitor,* contra.

MACINTYRE, J.. ■ .An indictment, charging the use of obscene language in the presence of a female, was found in the superior court of Bibb County, and by that court transferred to the city court of Macon. The following plea in abatement, properly sworn to, was filed to the indictment: "Because the indictment does not show that it has ever been filed in the superior court of Bibb County, Georgia, and entered and recorded on the minutes of Bibb superior court, as is required by law, and the indictment does not have on its face the stamp of authenticity.; it not appearing that said indictment was legally returned in the superior court of Bibb County, Georgia, and filed with the clerk of the Bibb superior court, and by him entered and filed in Bibb superior court, and recorded on the minutes of Bibb superior court. Copy of indictment attached hereto and made part hereof."

On the back of. the indictment were the following entries: "No. 47019. No. 3891. Bibb superior court, April term, 1942. The State vs. Emmett Ricks. Entered on the minutes, book 27, pages 782, 792. Using obscene language in presence of female. True bill, 5/21/42. M. J. Witman, foreman, Mrs. Judy McCoy, prosecutor. Chas. H. Garrett, solicitor-general. Filed in office, May 26, 1942, H. Elmo Simmons, deputy clerk. Witnesses: Mrs. Judy McCoy, 717 Cherry St.; Carrie Livingston, 159 B. Way; Bobby Cheek, Quality Lunch Room, B-Way, near Poplar St. Officer Ben Ong; Mr. T. O. Moseley, Mgr. Arlington Hotel. The defendant, Emmett Ricks, waives formal arraignment, and pleads not guilty. This June 25th, 1942. O. L. Long, Solicitor C. C. M. We, the jury, find the defendant guilty, this 26th day of June, 1942. Melvin Harp, Foreman."

Among the other parts of the record specified by the defendant in the bill of exceptions as material to a clear understanding of the errors complained of are: "The indictment, with the entry in the city court of Macon, entered on the minutes, book 27, pages 782, 792, and with the entry of filing in the clerk's office of the city court of Macon on June 26th, 1942, signed H. Elmo Simmons, deputy clerk . . [and an] order dated May 26, 1942, transferring case No. 3891, State v. Emmett Ricks, from the superior court of Bibb County to the city court of Macon."

The order transferring said case, as it appears in the record transmitted to this court, is as follows: "Bibb superior court, April term, 1942. On motion of the solicitor-general, the following cases, which are misdemeanor cases, pending in this court, are hereby transferred to the city court of Macon: 3891, Emmett Ricks, using obscene language in the presence of female; 3887, John Lowe, bribery; 3879, E. C. Darity, receiving stolen goods. It is further ordered that the clerk of this court transmit to the city court of Macon the indictments in said cases, and all other papers connected therewith, together with a certified copy of this order. In open court, this May 26th, 1942. A. M. Anderson, Judge S. C. M. C. Charles H. Garrett, Solicitor-General. Georgia, Bibb County. Clerk's office, Bibb superior court: I, C. G. Sloan, deputy clerk of said court, in and for said county, do certify that the foregoing is a true and correct copy of the original order passed by the court transferring the above stated cases to the city court of Macon, just as the same appears of file and recorded in this office. In witness whereof, I hereby and hereunto set my official signature and the seal of said court, this May 26th, 1942. C. G. Sloan, deputy clerk, Bibb superior court. Filed in office, May 26, 1942, J. Harry Burns, clerk."

Georgia Laws, 1884-85, p. 476, § 31, provides: "*Be it further enacted,* That the judge of the superior court may send down from the superior court of Bibb County all presentments and bills of indictments for misdemeanors to said city court for trial, the order so transmitting such cases to be entered on the minutes of both of said courts." It is presumed that the officers did their duty, and entered the order transferring this case on the minutes of both courts. In some superior courts the entry, "received in open court from the bailiff of the grand jury," dated and signed by the clerk,

is made on the back of the indictment. In the instant case the entry on the back of the indictment [described as the front page thereof by the defendant] is: "True Bill 5/21/42," and if the minutes of the superior court show that the indictment was legally returned in open court, filed, entered, and recorded on the minutes, the plea in abatement is not good. The objection urged is that the indictment itself, with the entries thereon, does not show all of these things. When a paper purporting to be an indictment, and having the stamp of authenticity on its face, is transferred by an order of the superior court reciting that such case is pending in that court, and the transfer is otherwise in accordance with the rules of law applicable to a transfer of a valid indictment in such a case, it seems to us that this raises the presumption that the indictment was found and returned in the superior court as required by law.

The indictment with the entries thereon was attached to the plea in abatement as an exhibit, and made a part of the plea; and the indictment and entries, when considered with relation to one another and as an entity, give the indictment the stamp of authenticity on its face. "Judicial knowledge is not reached by the use of evidence; it is a matter pertaining to the judicial function and its existence, like that of an admission, stipulation, or rule of presumption, dispenses with evidence as to the point covered." 31 C. J. S. 519, § 13(a). The stamp of authenticity borne by the indictment on its face, the rule of presumption, and the doctrine of judicial cognizance, when applied to the plea in abatement, in this case, authorized the judge to hold that the plea, which merely alleged that the indictment itself did not show on its face that it was properly returned, was not sufficient; and the judge did not commit reversible error in "disallowing the plea." However, the proper practice would have been to have overruled the plea. *Wells* v. *State,* 118 *Ga.* 556 (6) (45 S. E. 443). It should be noted that the plea does not allege that in truth and in fact the indictment was not properly returned; but only that the indictment itself did not show that it was properly returned. The cases of *Zugar* v. *State,* 194 *Ga.* 285 (21 S. E. 2d, 647), and *Sampson* v. *State,* 124 *Ga.* 776 (53 S. E. 332, 4 Ann. Cas. 525), cited in the brief of the defendant, are clearly distinguishable by their particular facts from the instant case.

■ Section 26-6303 of the Code provides that any person who, without provocation, uses obscene, vulgar, or profane language in the presence of a female, shall be guilty of a misdemeanor. The charging part of the indictment alleged that on the 28th day of April, 1942, 'the defendant "did then and there unlawfully and with force of arms, without provocation, use certain obscene language in the presence of a female, the said female being Mrs. Judy McCoy, the substance of said language being as follows: 'Come here baby and kiss me, I am going to get into your pants,' meaning that he was then and there proposing sexual intercourse with said female." The defendant demurred to the indictment on the ground that it did not charge the use of obscene and vulgar language. The demurrer further attacked the indictment because the words alleged to have been used are not obscene and vulgar. The words alleged to have been used were, "Come here baby and kiss me, I am going to get in your pants." It is alleged by innuendo that the accused meant to propose sexual intercourse. The demurrer attacked the innuendo as being merely a conclusion for the reason that the words alleged to have been used did not warrant such innuendo or construction. Words get their proper meaning almost entirely from the time, place, circumstances, and the intent with which they are used. We think that the language alleged in the indictment to have been used in the presence of a female, when considered in connection with the allegations by way of "inducement" or explanation, was obscene and vulgar within the meaning of the statute, and that the court did not err in overruling the demurrer. *Holcombe* v. *State,* 5 Ga. App. 47 (62 S. E. 647); *Roberts* v. *State,* 120 Ga. 177 (47 S. E. 511).

■ The defendant objected to that part of the testimony of Mrs. Judy McCoy in which she testified that in March, 1942, the defendant said to her and in her presence: "When are you going to give me a date with you?" on the ground that the State could not put the accused on trial for the language charged in the indictment, and then embarrass and prejudice him by proving that at a different place, and on a different date, he used wholly different and dissimilar language from that charged in the indictment. The intention of the defendant, in using the language charged in the indictment, and the purpose for which he used it, when addressed to the female, constitute the offense in the instant case. *Dillard* v.

*State,* 41 *Ga.* 278, 281. And we think the language objected to, which was used about a month before the language charged in the indictment, was admissible as tending to show the intent and purpose of the defendant, when he made the statements charged in the indictment. The two statements, both made to the prosecutrix, the one objected to, and the one for which he was being tried, are so connected in time and circumstances, and are so similar in their other relations, that the same motive may reasonably be imputed to both, and the statement objected to was properly admitted in evidence. In short, the testimony was admissible as tending to illustrate the intent of the defendant in the transaction for which he was being tried, and not for the purpose of proving two separate crimes. *Farmer* v. *State,* 100 *Ga.* 41 (28 S. E. 26). We think that the objection to this testimony was properly overruled.

■ Section 38-1803 of the Code provides: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." Thus one method of impeaching a witness is by showing that he made statements out of court at variance with his testimony on the witness stand. And when an attempt is made to impeach a witness by this method, whether such attempt, as in all other attempts to impeach a witness, is successful, is for the jury. If the jury believe from the evidence that any witness in the case has made statements at any other time or place at variance with his testimony in the case, they have the right to take such facts into consideration in determining the weight to be given the testimony of such witness; and though not required to do so, they could, or might reject the testimony of the witness entirely. *King* v. *State,* 163 *Ga.* 313, 322 (136 S. E. 154). And thus when instructing the jury on the method of impeachment provided for in the Code, § 38-1803, that a witness may be impeached by contradictory statements previously made by him as to matters relative to his testimony and to the case, "it is error for the court to instruct the jury that if they believe a witness has made previous statements contradictory to his testimony delivered on the trial, such testimony should be disregarded, unless it 'is corroborated by other credible evidence, or is corroborated by the proven circumstances in the case.'" *Waycaster* v. *State,* 136 *Ga.* 95 (3) (70 S. E. 883). The instructions in the instant case, as they relate to this provision of the Code were not calculated to

lead the jury to believe that the testimony of a witness, who had made previous statements contradictory to his testimony delivered on the stand, should be disregarded, unless it is corroborated by other credible evidence, or by other facts and circumstances proved on the trial.. The instructions here referred to are not error in that they led the jury to so believe. It would be otherwise if the instructions were confusing and were calculated to lead the jury to so believe. We think that neither the instruction as to the method of impeachment under the provisions of the Code, § 38-1803, nor the instruction relative to the other methods of impeachment referred to in the charge, was, for the reasons assigned, subject to any of the exceptions made in special grounds of the motion for a new trial. *Smaha* v. *George,* 195 *Ga.* 412 (24 S. E. 2d, 385).

■ Special grounds 3, 5, and 7 will be discussed in this division of the opinion. The court charged the jury in part as follows: "Gentlemen, I will read to you the statute of our State under which this indictment has been prepared, and at the outset call your attention to the fact that this defendant is charged in the indictment only with using obscene language in the presence of females, but I will read to you the entire section: 'Any person who shall, without provocation, use to or of another, and in his presence, opprobrious words or abusive language, tending to cause a breach of the peace, or who shall, in like manner, use obscene and vulgar or profane language in the presence of a female, or any person who shall communicate to any virtuous female within this State by writing or printing any obscene or vulgar language or improper proposals, or by indecent or disorderly conduct in the presence of females on passenger cars, street cars or other places of like character, shall be guilty of a misdemeanor.' [Now, obscene and vulgar language as used in the statute includes any foul words which would reasonably offend the sense of modesty and decency of the woman in whose presence the words were spoken, if they were, under all the circumstances of the case as you find them to exist. Language tending to incite illicit sexual intercourse is obscene and vulgar]. (Now, should you find beyond a reasonable doubt that the defendant did, without provocation, state to the prosecutrix substantially the words set out in the indictment, intending thereby to propose illegal or sexual intercourse, and this was done in her presence, you

would convict the defendant of using obscene language in the presence of a female; but should you find he did not use such alleged words in the presence of the prosecutrix, then you would acquit the defendant of the charge involved)." The defendant excepted to that part of the charge above quoted enclosed in brackets: 1. Because the court instructed the jury, as a matter of law, that certain words were obscene and vulgar, and that that being an expression of an opinion by the trial judge, it was error. 2. It was likely to impress the jury with the court's opinion that the accused had used words in this case which tended to incite illicit sexual intercourse, and which were obscene and vulgar. 3. It is the province of the jury to determine whether certain words were obscene and vulgar, considering all the circumstances of the case, and the court instructed the jury that words tending to incite illicit sexual intercourse were obscene and vulgar under any and all circumstances. 4. Because, the court charged if the words or language offended the sense of modesty and decency of the woman in whose presence the words were used, no matter how prudish a particular woman might be, the words would be legally obscene and vulgar; whereas, under the law, words are not obscene or vulgar, unless calculated to offend a reasonable and ordinarily sensible person.

He further excepted to that part enclosed in parenthesis for the following reasons: "1. Because the court stated as matter of law the language alleged was obscene, thus withdrawing from the jury their right to determine as matter of fact, considering the circumstances, whether the language was obscene or not. 2. Because the court instructed the jury to convict the defendant if the jury considered the language obscene; whereas, the statute says the language must be obscene and vulgar. 3. Because the charge of the court stated that language intended to incite sexual intercourse or propose sexual intercourse was a violation of the law and required a conviction, which is not the law." In *Holcombe* v. *State*, supra, it is stated: "Of course, language tending to incite sexual intercourse is obscene and vulgar." And in *Dillard* v. *State*, 41 *Ga*. 281 (supra), it is said: "The following words, spoken by the defendant to, and in the presence of a female, without provocation, 'Will you go to bed with me?' was obscene and vulgar language within the meaning of the statute." In charging the jury in that part of the instruction above quoted in brackets, that "language [not

necessarily the words used in the instant case, but any words] tending to incite illicit sexual intercourse is obscene and vulgar," the court was confining himself to the abstract, and did not refer to the particular words used in the indictment. Thus he was not expressing any opinion as to what had or had not been proved. (Brackets ours.) *Edwards* v. *Atlanta, Birmingham and Coast Railroad Co.*, 63 *Ga. App.* 212, 217 (10 S. E. 2d, 449). In the instant case the judge charged a correct abstract principle of law, and instructed the jury with reference to the concrete, and enumerated the action and conduct constituting all of the elements of the offense charged in the indictment; and then further instructed the jury that if they should find these elements to be proved beyond a reasonable doubt, such acts and conduct would be sufficient to authorize the conclusion that the defendant was guilty of the crime charged. Instructions must be examined with relation to one another and as an entirety, and when the instructions in the instant case are so examined, we think that the judge was within the rule laid down in *Keener* v. *State*, 18 *Ga.* 194, 230 (63 Am. D. 269), that, "It is the duty of the judge to declare to the jury what the law is, with its exceptions and qualifications; and then to state hypothetically, that if certain facts, which constitute the offense, are proved to their satisfaction, they will [be authorized to] find the defendant guilty; otherwise, they will acquit him." *Cammons* v. *State*, 59 *Ga. App.* 759, 762 (2 S. E. 2d, 205). The exceptions, as stated in this division of the opinion, to the excerpts in brackets and parentheses in that part of the charge quoted above do not require the granting of a new trial. The fact that the woman in whose presence the obscene language was used was prudish might, under some circumstances, be a circumstance affecting the inquiry in an offense such as is here charged, but there is no evidence in this case to raise such an issue. The testimony here is merely that she was a woman, the wife of a man other than the defendant. And the court was not required to charge that the proof must show that she was a reasonable, ordinary, sensible person. *Pierce* v. *State*, 53 *Ga.* 365, 370.

■ Special ground 6 sets out that there was a written request to charge by the defendant, and shows that the court charged that the State must prove beyond a reasonable doubt that the accused used the language, or substantially the language, set out in the

indictment, in the presence of the female prosecutrix to authorize a conviction. However, the defendant sought to have the court charge that the State must prove beyond a reasonable doubt that the accused used the language set out in the indictment to authorize a conviction. We think that the court charged the correct principle of law when he instructed that the State must prove the language, or *substantially* the language that the State alleged was obscene; and that the request of the defendant to charge that the State must prove the exact language alleged in the indictment to be obscene was incorrect. Thus the failure to charge as requested by the defendant was not erroneous.

■ Special ground 9 complains that the court erred in admitting testimony by the State for the purpose of showing the good character of the prosecutrix, who testified in the case. A witness, Lowe, testified, in effect, that Judy McCoy, prior to the trial of the case, told him that she would settle the case for $100 on her own initiative, and that he thereafter submitted the proposition to the defendant; that Lowe did not propose the settlement as stated prior to the trial by Judy McCoy. It was inferable from the evidence that the defendant contended; (1) That Judy McCoy, the prosecutrix, began the prosecution for the purpose of unlawfully obtaining money from the defendant, in an effort to unlawfully settle a criminal case; or, (2) hoping to allay any suspicion that might have been created because of the statement of her intimacy with the defendant and with some soldier; and that the defendant's counsel, in his opening statement to the jury, in giving an outline of the defendant's case and contentions to the jury, stated that the defendant would undertake to show and prove the contentions above stated. Thus the statement of Judy McCoy, prior to the trial, as testified to by Lowe, was contradictory to her testimony at the trial. There was also a conflict between the statement of Judy McCoy made before the trial, as testified to by her mother-in-law, a witness for the defendant, and the testimony of Judy McCoy on the trial. The former being that Judy McCoy opened the discussion with the mother-in-law, as to whether to accept the proposition of a settlement of the case for $100; the latter being, in effect, that the mother-in-law opened the discussion of settling the case, and that Judy McCoy replied by asking the advice of her mother-in-law. Thus the statement of Judy McCoy before the trial, as testified to

by her mother-in-law, was contradictory to her testimony at the trial, as to who first proposed the settlement. By command of section 38-1803 of the Code, where it is sought to impeach a witness by proof of contradictory statements, the witness may be sustained by evidence of good character. *McBride v. State,* 150 *Ga.* 92 (102 S. E. 865) ; *McEwen* v. *Springfield,* 64 *Ga.* 160. Hence it was not error for the court in the instant case to allow evidence of good character of the witness, Judy McCoy, and to charge on the effect of proof of such good character. *Pulliam* v. *Cantrell,* 77 *Ga.* 563, 568 (3 S. E. 280) ; *Miller* v. *Western and Atlantic R. Co.,* 93 *Ga.* 480, 481 (21 S. E. 52).

■ The State took the position that the McCoys, who all agreed "are not much," allowed a situation with reference to their associations with the negro to develop to such an extent that the negro had the nerve to attempt sexual relations with young Mrs. Judy McCoy, and thought that he could do so in safety; and that Judy McCoy was young and had been led into this bad situation by marrying into the family. The evidence for the State, if credible, was sufficient to support the verdict. The jury being the judges of the weight of the evidence, this court can not disturb the judgment refusing a new trial. *Teel* v. *State,* 61 *Ga. App.* 576 (6 S. E. 2d, 794) ; *Aycock* v. *State,* 62 *Ga. App.* 812 (10 S. E. 2d, 84).

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON REHEARING.

MacIntyre, J. There is no merit in the first ground of the motion for a rehearing, which complains of the ruling in division one of the opinion. The plea in abatement alleged merely that the indictment itself did not show on its face that it was properly returned. No evidence was offered in support of the plea, and the doctrine of judicial cognizance, the rule of presumption, and the stamp of authenticity borne by the indictment on its face, when applied to the plea in abatement, authorized the judge to enter a judgment overruling the plea. The fact that the judge used the words "disallowing the plea" instead of the words "overruling the plea," was such a technical error as would afford no cause for a reversal of the judgment. *Wells* v. *State,* 118 *Ga.* 556 (7) (supra).

Ground 2 assigns error on the admission, over objection, of testimony of T. O. Moseley as to the good reputation of Mrs. Judy

McCoy. Special ground 10 assigns as error the admission over objection of similar testimony of Miss Florence Davis. The defendant contends that this testimony was immaterial; and that no attempt had been made to impeach her as a witness. We can not agree to these contentions, and think the evidence was properly admitted over the objections made. In his opening statement to the jury, the defendant's counsel stated that the defendant would undertake to prove, among other things, that Mrs. McCoy instituted the prosecution against the defendant either for the purpose of obtaining money from him, or for another purpose stated hereafter. On cross-examination Mrs. McCoy testified that she did not make the charge against the defendant, "trying to get money out of him;" that she did agree to settle the case for $100, if paid in cash, but that this matter of settlement originated with John Lowe, who testified that he was employed by the defendant to "investigate the case." Lowe testified that he told the defendant that Mrs. McCoy and her family "wanted money," and would drop the case if he got up money. It is inferable from Lowe's testimony that the matter of settling the case for money originated with Mrs. McCoy, and not with him. In his unsworn statement on the trial the defendant stated that Lowe told him that "he knew these people . . and all they wanted was money out of me."

In his opening statement to the jury, the defendant's counsel also said that the defendant would undertake to prove that if Mrs. McCoy did not institute the prosecution to obtain money from the defendant, she instituted it to prevent a threatened separation between her and her husband, about to ensue because of a statement made that Mrs. McCoy had appeared to be unduly intimate with the defendant, who was a negro barber. On cross-examination the defendant elicited from Mrs. Judy McCoy that her husband was angry with her, and threatened not to live with her because he claimed undue familiarity between her and a soldier; that McCoy's mother, Mrs. W. R. McCoy, made a statement that she thought Mrs. McCoy was too familiar with the defendant; and that her husband (Mrs. Judy McCoy's) took her to Oglethorpe Infirmary to have her examined to see if she were pregnant before leaving her. Mrs. W. R. McCoy, a witness for the defendant, testified that Carrie Stevens had said something about Mrs. Judy McCoy being too friendly with the defendant, and that the husband of Mrs. Judy

McCoy claimed to have seen his wife "hugging some soldier;" and that; upon being informed by Mrs. Judy McCoy of the defendant's alleged offense, as charged in the indictment, her husband insisted upon her confronting the defendant himself with her statement; and that she thought her son "would be better off if he would leave" his wife. Carrie Stevens testified for the defendant that she accused Mrs. McCoy of being too intimate with the defendant, and that McCoy threatened to quit his wife on account of claimed intimacies with a soldier, and caused her to be examined as above stated in order that she could not blame it on him.

It was proper for the defendant to show, if he could, that Mrs. Judy McCoy instituted the proceedings against him from an improper motive, that is, either to extort money from him, or to create a situation which would in some way prevent the threatened separation between her and her husband. The jury would have had a right to consider such evidence "upon the question of the bona fides of the prosecution (and) . . . upon what credibility ought to be attached" to the testimony of Mrs. Judy McCoy. *McCullough* v. *State,* 11 *Ga. App.* 612 (4), 617 (76 S. E. 393); *Billings* v. *State,* 8 *Ga. App.* 672 (2) (70 S. E. 36); *Huff* v. *State,* 106 *Ga.* 432 (32 S. E. 348). "As illustrating the interest and credibility of a witness, and for the purpose of impeachment it is competent to show that the witness made an effort to improperly influence and suborn another witness in the case." *Parker* v. *State,* 11 *Ga. App.* 251 (3) (75 S. E. 437).

By attacking Mrs. Judy McCoy in an effort to show that the prosecution was instituted by her from improper and corrupt motives, the defendant put her character in issue, and it was permissible for the State to offer evidence of her general good character, to go to the jury together with all the other evidence in the case, to be considered by them upon the question of her credibility. It would be most unfair and unjust to the State's case to hold that the defendant might attack the character of the witness against whom the outrage was alleged to have been committed, without also holding that the State might be permitted, if it could, to corroborate that witness by proof of her good character in any manner authorized by law. "When in order to discredit a witness, his reputation has been assailed, the party by whom he was introduced has a right to introduce rebutting evidence to show that his char-

acter ·and reputation were good,. even though the attempt to discredit was made on the examination of the witness ·himself." *Gazaway* v. *State,* 15 *Ga. App.* 467 (2) (83 S. E. 857). "If a witness is assailed on cross-examination by questions calculated to impeach his veracity and question his truthfulness, he may introduce evidence to sustain his general character." Warfield *v.* L. & N. Railroad Co., 104 Tenn. 74 (55 S. W. 304, 78 Am. St. R. 911); LaFollette *v.* Minton, 117 Tenn. 415 (101 S. W. 178, 11 L. R. A. (N. S.) 478) ; Chesapeake &c. R. Co. *v.* Fortune, 107 Va. 412 (59 S. E. 1095) ; George *v.* Pilcher, 28 Gratt. (Va.) 299, 26 Am. R. 350. See also, in this connection, *McTyier* v. *State,* 91 *Ga.* 254 (3), 256 (18 S. E. 140) ; *Morrow* v. *State,* 18 *Ga. App.* 12 (88 S. E. 911). "The rule prevailing in England and in most of the American States, that evidence of character is not usually received when of-. fered for. the purpose of throwing light on the probability of the doing of a certain act by the person whose character is in question, is not of force in this State. The contrary doctrine has been recognized in our jurisprudence from a very early date. . . The courts of this State, out of deference to the policy expressed in the maxim, 'Let there be light,' have rejected the old rule, which has long outlived the reason from which it sprang." *McClure* v. *State Banking Co.,* 6 *Ga. App.* 303, 304 (65 S. E. 33).

It is well settled law that when the transaction in question necessarily involves the character of a party, evidence of general good character is admissible. This rule has been applied frequently in cases in which fraud, theft, or other like conduct were charged; and in such cases the party thus charged and attacked is always permitted to offer proof of general good character. We know of no reason why this rule should not be applied in favor of a witness against whom the State contends a crime was committed, when the defendant contends upon the trial that the crime was not committed, but that the prosecution had its inception in the actual fraud and corruption of the complaining witness. Code, § 38-202; *German-American &c. Association* v. *Farley,* 102 *Ga.* 720 (5), 745 (29 S. E. 615) ; *Faulkner* v. *Behr,* 75 *Ga.* 671 (5) ; *Dalton* v. *Jackson,* 66 *Ga. App.* 825, 826 (18 S. E. 2d, 791) ; *Mays* v. *Mays,* 153 *Ga.* 835 (4) (113 S. E. 154) ; *Metropolitan Life Ins. Co.* v. *Hand,* 25 *Ga. App.* 90, 91 (102 S. E. 647) ; *Wimberly* v. *Toney,* 175 *Ga.* 416 (6) (165 S. E. 257). Nothing here said is contrary to *Bell* v.

*State*, 100 *Ga.* 78 (27 S. E. 669), and other like cases, holding that "a witness impeached by disproving the facts testified to by him, can not be sustained by proof of general good character." See also, *McBride* v. *State*, 150 *Ga.* 92, 95 (supra). For a discussion of the general question when evidence of general reputation is admissible to sustain a witness, see George *v.* Pilcher, 28 Va. 299 (supra).

*Judgment adhered to. Broyles, C. J., and Gardner, J., concur.*