WILLIAM SPORCK AND JOYCE SPORCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sporck v. Commissioner
Docket No. 3087-75.
United States Tax Court
T.C. Memo 1978-79; 1978 Tax Ct. Memo LEXIS 440; 37 T.C.M. (CCH) 378; T.C.M. (RIA) 780079; February 27, 1978, Filed Irving Bell, for the petitioners. John P. Graham, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in income tax and additions to tax as follows: Additions to tax
William Sporck [2] Year
Income tax
Sec. 6654(a) [1]
Sec. 6653(b)
1967
$5,762.07
$11.48
$2,881.04
1968
7,974.49
3,987.25
1969
5,664.68
43.80
3,562.16
The issues for decision are: (1) Whether petitioners understated their taxable income during the years in issue, as determined by respondent, using the net worth method of reconstructing income. (2) Whether any portion of the underpayment *442 in tax was due to fraud on the part of William Sporck. (3) Whether the statute of limitations bars assessment and collection of the deficiencies. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulations of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, William and Joyce Sporck (hereinafter William and Joyce), are husband and wife and resided in Bedford, Ohio, at the time of filing the petition herein. They filed joint tax returns for the years under consideration with the Internal Revenue Service Center, Cincinnati, Ohio. After graduating from high school, William served in the Navy from 1957 to June 1960. He was first assigned to San Diego, California, where he attended medical corpsman school. He was then assigned to the Naval Hospital at Philadelphia, Pennsylvania, and then to the Finance Center at Cleveland, Ohio, and subsequently was reassigned to the Philadelphia Naval Hospital. Upon his discharge from the Navy, William returned to his former job as a stock boy for an A & P grocery store. In September 1960, he married Joyce. While they both worked, he *443 attended college and then beautician school in the evenings. They lived in a trailer which Joyce's grandfather gave them. In 1963, William opened a beauty salon, Fountain of Fashion, which he operated as a sole proprietorship. During the latter part of 1969, William formed two partnerships, each with another person, to operate two additional beauty shops. William employed Robert Midenberger, a licensed public accountant, from 1963 to 1973 to prepare his income tax returns. Mildenberger did not audit William's books but relied on figures furnished by William for income and used check stubs and cash invoices to determine expenditures. He did not ask, and was not given an opportunity, to examine the cash register tapes, which were destroyed sometime prior to respondent's investigation. In 1967, 1968, and 1969, total expenditures and withdrawals exceeded business receipts, according to Midenberger's records. When asked about this situation, William had no explanation for his accountant. Mildenberger made adjusting entries in the ledgers to reflect the excess withdrawals. On August 2, 1966, petitioners purchased a two-family house and land located at 1 Elm Street, Bedford, *444 Ohio. To finance this purchase, they applied for a loan to Third Federal Savings and Loan Association, Cleveland, Ohio. Their application stated that the beauty shop was worth about $30,000 and that they had paid $30,000 for equipment over three years. It also stated that William drew $300 a week and Joyce drew $175 a week in salaries. They asserted that they had $5,900 in bank accounts and no cash on hand. In April 1968, William filed an application for a loan to finance the purchase of rental property at 157 Paul Street, Bedford, Ohio. On this application, he stated that his salary from Fountain of Fashion was $16,000 a year and that he had received rental income of $1,440 in the previous year. Joyce's mother, Eleanore Fleischer, lent her $6,000 in connection with the purchase of property at 193 Columbus Road, Bedford, Ohio, on September 19, 1969. Joyce and her mother each purchased a one-half interest in that property for $13,750. William filed property tax returns with Cuyahoga County and the State of Ohio for the years 1964 through 1969. None of these returns reported cash on hand. In 1969, William received $2,100 from the Ohio Bell Telephone Company in settlement *445 of his claim for damages caused to his business when the telephone company erroneously assigned the same number to his beauty salon and to a pizza parlor. Respondent began his investigation of petitioners in June 1970 and one of his auditors interviewed William and his accountant in the fall of 1970. The auditor assigned to the case died and it was reassigned in June 1971 to a field audit agent. After examining the files, he referred the case to the Intelligence Division because of indications of tax evasion. The case was then assigned to a special agent, who approached William at his place of business in July 1971. Because William expressed a desire to consult his accountant prior to being interviewed by the special agent, a meeting was set for August 2, 1971, with the agent at the office of William's accountant. At that meeting, the method of handling business receipts in William's business was discussed. At a subsequent meeting on September 7, 1971, William and his accountant were shown a net worth computation prepared by respondent's agents which reflected substantial understatements of income for each of the years 1967, 1968, and 1969; the computation included $50 cash *446 on hand in respect of each year. After reviewing the computation with his accountant, William stated at the meeting that it was substantially correct and offered no explanation for the understatements of income. Over a month later, William arranged a meeting with the special agent, at which he told him that when he was discharged from the Navy in 1960 he had a cash hoard of almost $38,000, which he had obtained by loaning money to others at interest rates of 50 percent to 100 percent. The computation of petitioners' increase in net worth and their understatement of adjusted gross income is as follows: Net Worth
William Sporck and Joyce Sporck ASSETS
12/31/66
12/31/67
12/31/68
12/31/69
Cash on Hand
$ 50.00
$ 50.00
$ 50.00
$ 50.00
Cash in Banks: Cleveland Trust: Savings Account 044640-0
2,089.56
10,253.21
15,579.54
15,300.00
Savings Account 048345-3
6,623.14
10,922.67
Checking Account 50065-0952
295.83
2,366.21
1,297.06
34.47
Checking Account 80060-7332
219.90
Citizens Federal Savings & Loan: Savings Account 81220
758.50
2,526.56
National City Bank: Checking Account 3-02-116-5
388.71
Real Estate: One Elm Street, Bedford
24,000.00
24,000.00
24,000.00
24,000.00
1966 improvements
2,306.39
2,306.39
2,306.39
2,306.39
1967 improvements
3,053.28
3,053.28
3,053.28
1969 improvements
650.00
23 First Street, Bedford
16,500.00
16,500.00
155-57 Paul Street, Bedford
29,900.00
29,900.00
25 North Park Street, Bedford
31,000.00
193 Columbus Road, Bedford
(1/2 interest)
13,750.00
Automobiles: 1965 Plymouth
2,884.00
2,884.00
1967 Chevrolet
3,946.80
3,946.80
1968 Chrysler
4,075.00
4,075.00
Boats: 1955 Lyman, Johnson outboard &
trailer
$ 354.15 $ $ $
Starcraft Mercruiser
3,650.00
Motorcycles: 1966 Harley Davidson
206.00
1968 Yamaha
585.00
1966 Harley Davidson
1,879.00
Depreciable property, Fountain of
Fashion, 661 Broadway, Bedford
19,330.38
22,541.51
27,076.51
28,058.43
Business inventory, Fountain of
Fashion, 661 Broadway, Bedford
722.00
3,994.50
7,629.10
697.00
Capital Account,
Fountain of Fashion II, partnership,
Maple Heights, Ohio
1,916.41
Capital Account,
Fountain of Fashion III, partnership
North Randall, Ohio
592.27
Loans Receivable: Fountain of Fashion II
845.95
Fountain of Fashion III
5,681.66
TOTAL ASSETS
$ 52,790.81
$ 77,831.66
$142,621.82
$195,767.94
LIABILITIES AND
ACCUMULATED DEPRECIATION
Loans & Mortgages payable: Central National Bank
$ 720.00 $ $ $
Third Federal Savings & Loan
17,146.89
15,793.31
15,075.38
15,069.06
Central National Bank
2,926.06
1,399.42
Citizens Federal Savings & Loan
11,500.00
11,116.81
Cleveland Trust Company
22,964.87
21,852.02
United Savings Association
21,676.65
1966 Harley Davidson Motorcycle
(Miles Acceptance Corp.)
868.56
Mary Sporck
7,000.00
Fred and Eleanor Fleischer
6,000.00
Reserve for depreciation on business
assets & rental property
6,150.53
9,214.35
15,523.03
18,303.89
TOTAL LIABILITIES AND
ACCUMULATED DEPRECIATION
$24,017.42
$27,933.72
$66,462.70
$101,886.99
Total Assets
$52,790.81
$77,831.66
$142,621.82
$195,767.94
Total Liabilities and
Accumulated Depreciation
24,017.42
27,933.72
66,462.70
101,86.99
NET WORTH AT BEGINNING OF YEAR
$28,773.39
$48,897.94
$ 76,159.12
$ 93,880.95
NET WORTH INCREASE
21,124.55
26,261.18
17,721.83
ADJUSTMENTS TO INCREASE IN NET
WORTH: Additions: Personal Living Expenses,
including food
$ 5,799.53
$ 5,160.07
$ 7,736.73
Federal Income Taxes Paid
59.50
382.74
1,498.81
Loss on sale of boat
425.42
Loss on motorcycle trade-in
85.00
Loss on 1965 Plymouth automobile
trade-in
1,938.00
Total Additions
$ 5,859.03
$ 7,987.23
$9,320.54
Deductions: Insurance Burglary claim
150.00
NET ADJUSTMENT (add) TO INCREASE IN NET WORTH
$ 5,859.03
$ 7,837.23
$9,320.54
INCREASE IN NET WORTH
21,124.55
26,261.18
7,721.83
Adjusted gross income as corrected
$26,983.58
$34,098.41
$27,042.37
Adjusted gross income as reported
4,627.67
9,254.27
7,755.80
Understatement of Adjusted Gross Income
(Carried forward)
$22,355.91
$24,844.14
$19,286.57
*447 ULTIMATE FINDINGS OF FACT Petitioners had unreported taxable income in the following amounts and for the years specified: Year
Amount
1967
$22,355.91
1968
24,844.14
1969
19,286.57
At least part of the deficiency for each of the years 1967, 1968, and 1969 is due to fraud on the part of William. OPINION 1. Underlying Deficiencies
Respondent determined deficiencies in petitioners' income taxes for the years 1967, 1968, and 1969 using the net worth method of calculation. Petitioners do not protest the use of this method, which is clearly proper, since the only available records were ledgers prepared by the accountant on the basis of figures given to him by William. See Holland v. United States,348 U.S. 121, 132 (1954); Lipsitz v. Commissioner,21 T.C. 917 (1954), affd. 220 F. 2d 871 (4th Cir. 1955). All but four items in the net worth calculation have been stipulated by the parties. At least insofar as the underlying deficiencies are concerned, the burden of proof is on petitioners with respect to these disputed items. Rule 142(a), Tax Court Rules of Practice and Procedure.Shahadi v. Commissioner,266 F. 2d 495 (3d Cir. 1959), *448 affg. 29 T.C. 1157 (1958). Petitioners' first objection to respondent's computation involves the amount of cash on hand on December 31, 1966, which respondent determined to be $50 on that date and at the end of each subsequent year. William claims that he had a cash hoard of $38,000 on this date which he had amassed by engaging in "loan-sharking" while in the Navy. He testified that he was under the impression that there was a seven-year statute of limitations applicable to loan-sharking and he therefore buried the cash until the statute of limitations had expired, at which time he began depositing it to his bank account in round amounts along with his deposits from his business. It would serve no useful purpose for us to review the record and our analysis of it in detail. Suffice it to say that, considering the record as a whole and the demeanor of William as a witness, whom we observed, we find his testimony unconvincing. We consider it significant that he initially indicated that respondent's net worth calculation was essentially correct and did not mention his cash hoard story until over a month after he was first presented with respondent's computation. *449 Our conclusion is also influenced by the vagueness of his testimony, especially with regard to funneling cash into his business account. He offered no evidence as to exactly when he began the process or as to how much cash was on hand at the end of each year in issue. [3] Moreover, he made no attempt to corroborate his testimony with bank records. On brief, petitioners emphasize that William's testimony is uncontradicted. But we are not required to believe William merely because respondent has introduced no evidence that directly contradicts his testimony. Shahadi v. Commissioner,supra.It is within our province to determine the extent to which such testimony is believable. Estate of Mercure v. Commissioner,448 F. 2d 922, 923 (6th Cir. 1971), affg. T.C. Memo. 1969-206; Potson v. Commissioner,22 T.C. 912, 928 (1954), *450 affd. sub nom. Bodoglau v. Commissioner,230 F. 2d 336 (7th Cir. 1956). Moreover, in this case there is contradictory evidence from William himself. Thus, in a 1966 loan application, William stated that he had $5,900 in bank accounts and no cash on hand. State and county personal property tax returns were filed which reported no cash at all. William's attempts at trial to explain these contradictions were totally unconvincing. Under the foregoing circumstances and in light of the further fact that not one scintilla of evidence was offered by way of corroboration, we reject William's claim of a cash hoard of $38,000 and, at least for the purpose of determining the underlying deficiencies, we uphold respondent's determination that petitioners had $50 cash on hand at the end of each year in issue. [4]
*451 The second disputed item is the amount loaned by Eleanore Fleischer to her daughter Joyce in connection with their purchase of property at 193 Columbus Road, Bedford, on September 19, 1969. Respondent admits a loan was made for $6,000 but denies that Mrs. Fleischer lent her daughter an additional $7,750 as contended by petitioners. We need not decide whether the amount in dispute was in fact loaned to Joyce, for, even if we accepted the testimony on this issue, the increase in net worth would not be affected. The record shows that $7,750 was withdrawn from petitioners' account number 48345 at the Cleveland Trust Company on September 3, 1969, but no account reflects a deposit of $7,750 representing the loan. William testified that they withdrew $7,750 from their own account because they were concerned that they would not receive the loan from Mrs. Fleischer (which she was obtaining from her father) in time for closing. He further testified that he did not deposit the loan when it was received because he was planning to buy a car and that, when he changed his mind, he still did not deposit the money. He further stated that he still had the money at the end of the year, although *452 he coupled his statement with the general suggestion that he might have spent it "piecemeal." We find it unbelievable that William could spend $7,750 piecemeal in less than four months without any recollection. Nor does the record herein furnish us with any basis for estimating any portion of the $7,750 that might have been so spent. Thus, we conclude that, even if Mrs. Fleischer made the claimed $7,750 loan, the funds were still on hand at the end of 1969, the last year in issue herein. The necessary adjustment for cash on hand at the end of that year would cancel out the effect of the loan on the net worth computation. Petitioners' third objection to respondent's determination concerns a $2,100 payment received from Ohio Bell Telephone in connection with the telephone company's error of listing the same telephone number for the beauty salon and a pizza parlor. The only evidence on this point is William's testimony that the payment must have been for damage to his name and, therefore, say petitioners, nontaxable and excludable from the net worth computation because "you can't demonstrate lost profits." Such evidence is totally inadequate to establish the nature of the payment *453 and the tax consequences attaching thereto, and we hold that petitioners have failed to carry their burden of proof on this issue. Rule 142(a), Tax Court Rules, supra.Even if we were to determine that the payment was made to compensate for damage to goodwill or other capital of petitioners, it would nevertheless be tasable, as petitioners have not proved any cost basis in goodwill. Raytheon Production Corp. v. Commissioner,144 F. 2d 110 (1st Cir. 1944), affg. 1 T.C.0 952 (1943). Cf. Commissioner v. Glenshaw Glass Co.,348 U.S.0 426 (1955). See Durkee v. Commissioner,162 F. 2d 184 (6th Cir. 1947), revg. on other grounds 6 T.C. 773 (1946). The consequence of the foregoing is that no downward adjustment should be made in the net worth computation for this item. [5]
*454 The point of petitioners' final argument is not completely clear but can, in any case, be rejected as having no effect on the net worth computation. The parties agree that William held a note receivable as of December 31, 1966, from the sale of his trailer. William testified at trial that he repossessed the trailer, probably in 1968, and paid to have it taken to a junk yard. But petitioner has not offered any evidence that his claim for the unpaid balance of the note became worthless either in 1968 or 1969, and, consequently, no adjustment should be made for this item. 2.Additions to Tax for Fraud. Respondent determined that part or all of the understatements in petitioners' income was due to fraud on the part of William. The burden of proving fraud is on respondent and he must satisfy this burden by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules, supra;Foster v. Commissioner,487 F. 2d 902, 903 (6th Cir. 1973), affg. T.C. Memo. 1972-188. The issue is one of fact. Beaver v. Commissioner,55 T.C.0 85, 92 (1970). *455 Respondent relies primarily on the pattern of understatements of income to sustain his burden of proof. We are cognizant of the dangers inherent in proving fraud by understatements of income computed by the net worth method. See Holland v. United States,supra;Mazzoni v. Commissioner,T.C. Memo. 1970-37, affd. 451 F. 2d 197 (3d Cir. 1971). Fraud will not be imputed or presumed and mere suspicion is insufficient to sustain a finding of fraud. See, e.g., Carter v. Campbell,264 F. 2d 930, 935 (5th Cir. 1959). Nor will we infer unreported income merely from increases in net worth and then infer fraud from that unreported income, thereby piling inference upon inference. Mazzoni v. Commissioner,supra.[6] At the same time, a repeated failure to report income over the years, including income reflected by increases in net worth, is evidence of fraud, if unexplained and sufficiently extensive. Lee v. United States,466 F. 2d 11 (5th Cir. 1972); Schwarzkopf v. Commissioner,246 F. 2d 731, 734 (3d Cir. 1957), *456 affg. on this issue T.C. Memo. 1956-155; Mazzoni v. Commissioner,supra.Moreover, the addition to tax attaches where "any part of any underpayment * * * is due to fraud." Section 6653(b) (emphasis added); Stone v. Commissioner,56 T.C. 213, 220-221 (1971). On other occasions, we have exercised extreme care to assure that respondent's reliance on the underlying deficiencies, on which petitioner has the burden of proof, does not have the effect of relieving respondent from his burden of proof on the fraud issue. See Mazzoni v. Commissioner,supra.[7] Here, we think it clear that respondent has carried his burden of proof with regard to the understatements of income. All but four items were stipulated and we have found that two of the disputed items have no effect on the net worth computation.We have also found that William in fact did not have a cash hoard, leaving only the payment from Bell Telephone in dispute. Respondent introduced no evidence regarding the nature of this payment or William's knowledge of, and belief about, *457 its tax consequences. We are not convinced that he had sufficient knowledge about taxation to form the requisite fraudulent intent to evade tax on this payment. Accordingly, insofar as proof of fraud is based on understatements of income, we have disregarded this payment. Moreover, respondent has established that William's beauty salon was a likely source of income. See Holland v. United States,supra; cf. United States v. Massei,355 U.S. 595 (1958). His equipment purchases for his business and his opening of two additional shops suggest the business was successful. Additionally, on loan applications, he stated that he received a salary of $15,600 in 1966 and $16,000 in 1968 -- amounts far in excess of the income from his business shown on the returns for those years. William has failed to explain the discrepancies or to give any plausible explanation for the understatements indicated by the net worth computation. Under such circumstances, the inference of fraud is exceedingly strong. Klassie v. United States,289 F. 2d 96 (8th Cir. 1961); Schwarzkopf v. Commissioner,supra. *458 When considered in light of the other indicia of fraud present herein -- destruction of cash register tapes, control over information given his accountant, and refusal to explain the excess of expenditures over receipts to his accountant -- the conclusion that William fraudulently understated his income is inescapable. Foster v. Commissioner,supra.
3. Statute of Limitations
Our decision on the fraud issue also disposes of petitioners' assertion that the statute of limitations bars the assessment and collection of the deficiencies determined herein. Section 6501(c)(1). In addition, section 6501(e)(1)(A), which establishes a six-year statute of limitations with respect to a return from which is omitted an amount in excess of 25 percent of the amount stated in the return, is applicable to 1968. Petitioners timely filed their 1968 return and reported gross income of $85,353.89, [8] so respondent must prove that petitioners omitted an amount in excess of $21,338.47. Bardwell v. Commissioner,38 T.C. 84, 92-93 (1962), affd. 318 F. 2d 786 (10th Cir. 1963). *459 While we cannot say that respondent has carried his burden of proving that such omission exactly equalled the $24,844.14 shown for that year on the net worth statement, we think there is sufficient evidence in the record herein for us to conclude that respondent has carried his burden of proving by a preponderance of the evidence that petitioners omitted an amount in excess of 25 percent of the reported gross income. He would therefore be entitled to prevail in any event under section 6501(e)(1)(A) for the taxable year 1968. Decision will be entered under Rule 155. Footnotes
2. Respondent, in an amended answer, asserted an addition to tax under section 6651(a)(1) against petitioner Joyce Sporck but conceded this issue on brief.↩
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise stated. ↩
3. We note that if we were to assume that the entire $38,000 was deposited to his account in equal amounts over the three years in question and also accepted William's other arguments, the net worth computation would indicate that petitioner had overstated his income for 1969, a most unlikely event.↩
4. At trial, a certified copy of petitioner's conviction, upon a plea of nolo contendere, of income tax evasion under section 7201 for the year 1969 was received into evidence for purposes of impeachment only. We have not considered this evidence in reaching our decision herein. We note that there may be a question as to the admissibility of such a conviction even for such limited purposes. Compare Rules 410 and 609(a), Federal Rules of Evidence. See also Kilgore v. United States,467 F. 2d 22 (5th Cir. 1972); Kilpatrick v. Commissioner,227 F. 2d 240, 243 (5th Cir. 1955), affg. 22 T.C. 446↩ (1954).
5. We note, however, that our decision does not support respondent's position on brief that the Bell Telephone settlement should be added to income in the net worth computation. The net worth method is based on the assumption that all income is reflected in increases in net worth and nondeductible cash expenditures. Respondent's approach would have the effect of including the $2,100 payment both implicitly and explicitly and he furnishes no basis for so doing beyond his bald assertion on brief that "[this] unagreed item was given no consideration in respondent's net worth computation." As a consequence, no upward adjustment should be made in the net worth computation to reflect this item and to counterbalance the stipulated decrease in the amount of personal living expenses determined in the deficiency notice.↩
6. See also Logan v. Commissioner,T.C. Memo. 1976-143↩.
7. See also Logan v. Commissioner,supra↩.
8. Respondent, in his pleadings and on brief, stated that petitioner reported gross income of $85,316.90 on his 1968 return. We have added to this figure interest income of $36.99 which respondent omitted without explanation.↩